# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————

No. 24-2055

PETER DAVENPORT

Plaintiff-Appellee

v.

TOWN OF READING

Defendant-Appellant

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————

REPLY BRIEF OF APPELLANT TOWN OF READING

———————————

Ivria G. Fried, First Circuit #1176846
Ethan B. Dively, First Circuit #1214606
Anthony J. Riley, First Circuit #1186156
HARRINGTON HEEP LLP
40 Grove Street, Suite 190
Wellesley, MA 02482
(617) 489-1600
ifried@harringtonheep.com
edively@harringtonheep.com
ajriley@harringtonheep.com

Date: March 17, 2025

# TABLE OF CONTENTS

Table of Contents.................................................................................2

Table of Authorities ...........................................................................3

Introduction ........................................................................................6

Argument.............................................................................................7

  I.  Davenport's Claim Accrued Upon the Land Court's Entry of Judgment on April 24, 2014. ...........................................................7

    a.  The Court Must Look to State Law to Determine the Moment a Taking Occurs.........................................................................7

    b.  Pursuant to Massachusetts Law a Fifth Amendment Taking Occurs Upon the Entry of Judgment of a Tax Lien Foreclosure. .....................................9

    c.  Davenport's Claim was Ripe for Adjudication Upon the Entry of Judgment on April 24, 2014. ...............................................11

    d.  Davenport Knew or Should Have Known of His Claim Upon Entry of Judgment on April 24, 2014. ...............................................13

  II.  The District Court Erred In Its Award of Damages. .......................16

    a.  The Town is Not Claiming Affirmative Damages. ....................16

    b.  Davenport Failed to Dispute the Town's Facts Related to Offset Costs....17

    c.  The Town is Entitled to Offsets for Unjust Enrichment. ...........18

Conclusion........................................................................................20

Signature...........................................................................................21

Certificate of Compliance .................................................................21

Certificate of Service........................................................................22

Addendum ...................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

<u>Constitutional Provisions</u>

Fifth Amendment................................................................................passim

<u>Cases</u>

*Biesemeyer v. Municipality of Anchorage, Alaska*, No. 3:23-CV-00185-SLG-KFR, 2024 WL 1480564 (D. Alaska Mar. 13, 2024).......................................................7

*Cavaluzzi v. Cty. of Sullivan*, 2024 WL 5238644 (S.D.N.Y Dec. 27, 2024) .........7, 8

*Devine v. Town of Nantucket*, 449 Mass. 499, 511 N.E.2d 591 (2007) ...................18

*Foshee v. Lane Cnty.*, No. 24 Civ. 447, 2024 WL 3970663 (D. Or. Aug. 26, 2024) .7

*Kelly v. City of Boston*, 348 Mass. 385, 348 N.E.2d 123 (1965).............................15

*Knick v. Twp. of Scott, Pennsylvania,* 588 U.S. 180 (2019) ................................6, 11

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc*., 552 F.3d 47 (1st Cir. 2009) ........................................................................................................18

*Milley v. Town of Reading*, D Mass. No. 1:25-cv-10359-NMG...............................5

*Morán Vega v. Cruz Burgos*, 537 F.3d 14 (1st Cir. 2008)......................................13

*Polizzi v. Cty. of Schoharie*, 720 F. Supp. 3d 131 (2024) .........................................7

*Ramsey v. City of Newburgh*, No. 23-CV-8599, 2024 WL 4444374 (S.D.N.Y. Mar. 12, 2024) .................................................................................................................7

*Santagate v. Tower*, 64 Mass. App. Ct. 324, 833 N.E.2d 171 (2005) ......................17

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................................17

*Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 507 F. Supp. 3d 444 (W.D.N.Y. 2020) ........................................................................................7

*Stephen v. Murray*, No. 14 Civ. 4951, 2016 WL 4402020 (E.D.N.Y. Aug. 17, 2016) ........................................................................................7

*Súarez v. Pueblo International, Inc.*, 229 F.3d 49 (1st Cir. 2000) ...........................17

*Tallage Lincoln, LLC v. Williams*, 485 Mass. 449, 151 N.E.3d 344 (2020) ......10, 13

*Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F.Supp. 340 (D. Mass. 1982) ..................................................................17

*Tyler v. Hennepin Cty.*, 598 U. S. 631 (2023) ..............................................5, 6, 8, 14

*Vistamar, Inc. v. Fagundo-Fagundo*, 430 F.3d 66 (1st Cir. 2005) ...........................11

Statutes

2024 Mass. Acts ch. 140, § 212 ..................................................................5

2024 Mass. Acts ch. 140, §§ 80-99, 212 & 250 ...............................................5, 8

Gen. Laws ch. 244 § 1  ……………………………………………………… .10

Mass. Gen. Laws ch. 244, § 14 ...................................................................10

Mass. Gen. Laws ch. 60 .......................................................................6, 8, 9

Mass. Gen. Laws ch. 60, § 77 ..................................................................9, 10

Mass. Gen. Laws ch. 60, §§ 64 & 75 ..............................................................9

Rules

Fed. R. Civ. P. 56 ........................................................................................16

# INTRODUCTION

This case involves the Town of Reading's (the "Town") 2014 foreclosure of a Massachusetts real estate tax lien on property formerly owned by Peter Davenport ("Davenport"), located at 179 Pearl Street in Reading, Massachusetts (the "Property"). The Town has emphasized the importance of the issues on appeal in this case, and the extent to which their resolution by this Court will inform future proceedings. This is no longer a hypothetical concern. Since the filing of the Town's brief, Davenport's counsel has filed another suit against the Town of Reading, *Milley v. Town of Reading*, D Mass. No. 1:25-cv-10359-NMG, involving alleged surplus equity from a 2015 tax foreclosure judgment and 2022 municipal sale. Relying on *Tyler v. Hennepin Cty.*, 598 U. S. 631 (2023), the new lawsuit advances practically identical claims to the ones here. While newly enacted legislation addresses the return of surplus equity following foreclosure, *See* 2024 Mass. Acts ch. 140, §§ 80-99, 212 & 250, it does not resolve the issue in this case, or the recently filed *Milley* case, of when a Fifth Amendment claim accrues during the Massachusetts tax foreclosure process.[1]

---

[1] While not dispositive, 2024 Mass. Acts ch. 140, § 212, strongly suggests claim accrual is upon judgment where a "former owner . . . whose right of redemption was foreclosed upon by a final judgment of foreclosure entered on or after May 25, 2021, but before the effective date of this act, may file a written complaint [] for the return of excess equity . . . where a [] judgment of foreclosure was entered and not appealed, on or before May 24, 2021."

As discussed below, the Massachusetts state law procedure in place at the time of the 2014 foreclosure dictates that Davenport's Fifth Amendment claim accrued upon the entry of judgment in the Land Court, on April 24, 2014. As a result, the District Court erred when it held that Davenport had an independent Fifth Amendment claim at the time of the Property's sale.

**ARGUMENT**

I. **DAVENPORT'S CLAIM ACCRUED UPON THE LAND COURT'S ENTRY OF JUDGMENT ON APRIL 24, 2014.**

Davenport argues that the District Court's holding that the statute of limitations runs from the date of sale is appropriate because he had no way of knowing that his Fifth Amendment rights had been violated at the date of foreclosure. Davenport's reasoning fails to recognize Massachusetts' statutory procedure for tax lien foreclosures, Mass. Gen. Laws ch. 60, *et seq*., which defines the scope of inquiry in this case and results in taking upon entry of judgment. This is consistent with federal jurisprudence concerning takings of property, where the statute of limitations begins to run on the date of the wrongful appropriation. *See, e.g., Knick v. Twp. of Scott, Pennsylvania,* 588 U.S. 180, 198 (2019).

    a. **The Court Must Look to State Law to Determine the Moment a Taking Occurs.**

There are now myriad cases attempting to pin down the moment of taking to evaluate statute of limitations defenses in cases brought in the wake of *Tyler*.

Together, the parties have cited an assortment of nonbinding precedent from Federal District Courts across the country. *Cavaluzzi v. Cty. of Sullivan*, 2024 WL 5238644 (S.D.N.Y Dec. 27, 2024) contains an apt description of the unsettled nature of this important question:

> The case law as to when takings claims based on retained surpluses accrue has begun only recently to develop, because claims of this nature first proliferated following the decision in *Tyler*. Some cases have treated the accrual date as the date of the property's sale, *see, e.g.*, [*Polizzi v. Cty. of Schoharie*, 720 F. Supp. 3d 131, 147 (2024)]; *cf.* [*Ramsey v. City of Newburgh*, No. 23-CV-8599, 2024 WL 4444374, at *3 (S.D.N.Y. Mar. 12, 2024)] (holding plaintiff's takings claim is not ripe because property has not been sold), while others have treated the accrual date as the date the defendant "took ownership" of the property, *Foshee v. Lane Cnty.*, No. 24 Civ. 447, 2024 WL 3970663, at *2 (D. Or. Aug. 26, 2024), the date a new deed was executed in connection with the property sale, [*Biesemeyer v. Municipality of Anchorage, Alaska*, No. 3:23-CV-00185-SLG-KFR, 2024 WL 1480564, at *3 (D. Alaska Mar. 13, 2024)] (citation omitted), or the date the title to the property was "formally transferred," *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 507 F. Supp. 3d 444, 452 (W.D.N.Y. 2020). Also defensible, although as-yet unsupported by a reported decision, is plaintiffs' theory that the takings claim should be keyed to the date when the County came into possession of the surplus without transferring it to the taxpayer. *Cf. Stephen v. Murray*, No. 14 Civ. 4951, 2016 WL 4402020, at *2 (E.D.N.Y. Aug. 17, 2016) ("Although the Court finds no perfectly congruous Second Circuit authority, other circuit courts of appeals considering accrual and ripeness in the takings context have consistently held that a cause of action does not accrue until a party has a right to enforce the claim." (citation omitted)).

*Id.* The *Cavaluzzi* Court, having identified the breadth this uncertainty, declined to reach any conclusion on this question finding that the record was not sufficiently developed to render a decision on a Rule 12(b)(6) motion to dismiss. Critically, in

declining to grant the city's motion, the Court also noted that New York's specific

and unique mechanism for the distribution of excess equity may play a central role

in determining the moment of taking. *Id.*

There is wisdom in the *Cavaluzzi* Court's inclination to consider the

applicable state statutory regime in determining the moment of taking. This is

consistent with the *Tyler*'s identification of state law as an important source of the

judiciary's understanding of property rights. *Tyler*, 598 U.S. at 638. Accordingly,

the Massachusetts law should inform this Court's decision when determining the

moment of claim accrual, which is the issue at the heart of this case.

### b. Pursuant to Massachusetts Law a Fifth Amendment Taking Occurs Upon the Entry of Judgment of a Tax Lien Foreclosure.

At all times relevant here, Massachusetts law provided that a municipality

could take property for nonpayment of real estate taxes, but this taking was subject

to a taxpayer's right of redemption which could only be foreclosed by a judgment

following a proceeding in the Massachusetts Land Court.[2] *See generally* Mass.

Gen. Laws ch. 60, *et seq*. The entry of judgment confirmed absolute title to the

---

[2] In response to *Tyler*, the Massachusetts General Court enacted amendments to Mass. Gen. Laws ch. 60, establishing a procedure for determining post-foreclosure surplus equity returning it to the taxpayer. *See* 2024 Mass. Acts ch. 140, §§ 80-99, 212 & 250. Such amendments took effect as of November 1, 2024 and do not apply to foreclosure judgments entered before May 25, 2021. *Id*. at §§ 212 & 250. The foreclosure proceeding in this case judgment in 2014, and was therefore governed by the pre-amendment version of Mass. Gen. Laws ch. 60.

property in the foreclosing municipality, which had no obligations thereafter to do anything other than record a copy of the judgment with the Registry of Deeds. *See* Mass. Gen. Laws ch. 60, §§ 64 & 75. Pursuant to Mass. Gen. Laws ch. 60, § 77, "[a]fter foreclosure by a town of the rights of redemption under a tax title or taking, as hereinbefore provided, the land shall thereafter be held and disposed of like any land belonging to it and held for municipal purposes, and shall not while so held be assessed for taxes."

In his brief, however, Davenport conflates tax lien "foreclosure" under Mass. Gen. Laws ch. 60 with mortgage foreclosure by a private mortgagee. Davenport asserts that prior to January 2023, the Town "had obtained a Land Court Judgment of Foreclosure but had not yet foreclosed on the property." *See* Davenport's Brief at 14. This may have been true if the Town were a lender foreclosing a mortgage pursuant to Mass. Gen. Laws ch. 244, § 14 and had a statutory right to sell the mortgaged property to satisfy the attendant debts. Pursuant to ch. 244, §§ 1 & 14, a mortgagee may complete the foreclosure of a mortgage by (1) entering the property and maintaining peaceable possession for three years under §1, or (2) by sale pursuant to § 14.[3]

---

[3] Foreclosure by sale has become ubiquitous to avoid the necessity of peaceable possession for three years by the mortgagee.

In stark contrast, Massachusetts' statutory regime is clear that a municipal foreclosure means only foreclosure of a taxpayer's rights of redemption, an act which is complete upon entry of judgment by the Land Court and after which the municipality may hold or dispose of the land just like any other municipal property. Mass. Gen. Laws ch. 60, § 77. This is a critical feature of Massachusetts statutory tax lien foreclosure and distinguishes it from the standard practice for mortgage foreclosures. In short, while a typical mortgage foreclosure is not complete until the subject property is sold, municipal tax lien foreclosure is complete upon entry of judgment. *See Tallage Lincoln, LLC v. Williams*, 485 Mass. 449, 452, 151 N.E.3d 344, 352 (2020) ("Strict foreclosure, by contrast, does not involve any type of sale; rather, the foreclosure judgment extinguishes the taxpayer's remaining interest in the property – the right of redemption – and converts the municipality's or third party's tax title into absolute title.")

The Town followed the statutory foreclosure process, which was complete upon entry of judgment, and because no subsequent process was required by law, this Court should find that Davenport's claim for surplus equity accrued at that moment, on April 24, 2014.

### c. Davenport's Claim was Ripe for Adjudication Upon the Entry of Judgment on April 24, 2014.

Davenport is also mistaken that his Fifth Amendment Claim was not ripe for adjudication when the Land Court judgment entered because prior to a sale "the

Plaintiff could not know if there was surplus equity above the tax lien AND that the Defendant would refuse to provide him with the surplus proceeds. . . ." *See* Davenport's Brief at 15.

It is undisputed that a takings claim accrues when a plaintiff knows or has reason to know that the government took their property without just compensation. *Vistamar, Inc. v. Fagundo-Fagundo*, 430 F.3d 66, 70-71 (1st Cir. 2005). However, Davenport has not provided any case law to support the suggestion that a would-be plaintiff needs to know the amount of damages in order to have a claim. It is axiomatic that a property owner has a Fifth Amendment claim even if they have no present understanding of the value of their taken property. Furthermore, the Supreme Court has explicitly rejected this argument in *Knick v. Twp. of Scott, Pennsylvania,* rejecting the notion "that there is no Fifth Amendment violation, thus no Fifth Amendment claim, until the government denies the property owner compensation in a subsequent proceeding. [T]he dissent . . . cannot reconcile its view with our repeated holdings that a property owner acquires a constitutional right to compensation at the time of the taking." 588 U.S. at 198.

Moreover, in evaluating claim accrual under the Massachusetts tax foreclosure regime, there is no meaningful distinction between "surplus equity," the amount of value in a taken property which exceeds the debts owed, and "surplus proceeds," the amount of proceeds from a sale in excess of the debt owed.

Both are reasonable measures of damages, but this distinction should not be interpreted to defer the accrual of a claim that should have been brought at the time of taking – when the Land Court judgment entered.

In arguing that the ripeness of his claim was contingent on the Town alerting him to its intended disposition of the Property and its willingness to provide compensation for surplus equity taken, Davenport assumes a procedural step that was never required by state law. Where the tax foreclosure procedures culminate upon the entry of judgment, it is unreasonable to allow the accrual of Davenport's claim to be delayed until the Town has taken an action that was not required to occur. That the Town never told Davenport its intended use of the Property or that it would not compensate him for his lost equity is immaterial because the foreclosure of his Property was complete, as a matter of law, on April 24, 2014.

### d. Davenport Knew or Should Have Known of His Claim Upon Entry of Judgment on April 24, 2014.

Davenport claims that he had no reason to know that his Property had been taken until it was sold in 2023, and blames the Town for not acting more swiftly to evict him and sell the Property. Davenport states that he could not have been aware of a Fifth Amendment claim until the Property was sold because before then he "wouldn't have known whether (a) the sale from the property would have resulted in proceeds that exceeded the tax lien, (b) if so, the amount of those proceeds, (c) whether or not the Defendant intended to keep the Property, and if so, if the fair

market value of the Property went beyond the tax lien, and (d) whether or not the Defendant would have provided him with the excess funds, if applicable." *See* Davenport's Brief at 16.

The problem with Davenport's argument is that none of this information was necessary for him to bring a timely claim in 2014. If completion of a Massachusetts tax lien foreclosure was contingent on the occurrence of a sale, he might be correct, however, as described above, the Town's statutory obligations ended after the judgment entered and a copy was recorded with the Registry of Deeds. Where no further notice or engagement with the taxpayer is required, Davenport cannot claim to have been unaware of his injury because he theoretically waited for the Town to take actions it was never required to take.[4] "[A] plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt." *Morán Vega v. Cruz Burgos*, 537 F.3d 14, 20 (1st Cir. 2008).

The reality of this case is that until *Tyler*, the Massachusetts tax foreclosure process had been upheld despite not including an express right to surplus equity. *See Tallage Lincoln, LLC*, 485 Mass. at 453, 151 N.E.3d at 352. This was the law in the Commonwealth for more than 100 years, and at all relevant times in this

---

[4] There are no facts or evidence in the summary judgment record to suggest Davenport was in fact waiting for the Town to notify him of its post-foreclosure actions.

case. *See Kelly v. City of Boston*, 348 Mass. 385, 388, 348 N.E.2d 123, 125 (1965)

("In 1915 the Legislature enacted the present system of foreclosing the right of

redemption in the Land Court with notice of the proceeding being sent to all

interested parties."). As a result, a taxpayer who was attentive to their rights in

2014, knew or should have known that completion of Land Court tax lien

foreclosure proceedings deprived them of all equity, surplus or otherwise, in their

property. A taxpayer who diligently defended their rights would have brought a

constitutional challenge to the foreclosure, claiming surplus equity as soon as the

foreclosure was complete. In fact, that is exactly with the plaintiff in *Tyler* did.

Geraldine Tyler recognized that the statutory system in place failed to provide her

with surplus equity and sued. *Tyler*, 598 U.S. at 635-36. Nothing precluded

Davenport from taking a similar action from 2014 to 2017 when he had knowledge

of the Land Court's judgment and the Town's recording of the same with the

Registry of Deeds.

Davenport places the blame for his "lack of knowledge" on the Town for

allowing him to "maintain the *status quo*." *See* Davenport's Brief at 16. But the

status quo was not maintained. Prior to the foreclosure, Davenport received tax

bills at the Property. Similarly, during the foreclosure proceeding, Davenport

received notice at the Property of the Land Court case. After judgment entered,

Davenport did not receive any further property tax bills, a clear change from the

past. A reasonable person – having received no tax bill for years on end and after receiving notice of the foreclosure – could not plausibly believe that their property rights remained unchanged.

Therefore, the Court should find that Davenport knew or should have known that the Town took absolute title to the Property in 2015 and hold that his claim is time-barred.

## II.    THE DISTRICT COURT ERRED IN ITS AWARD OF DAMAGES.

The District Court erred when it ordered the Town to pay Davenport $219,453.52 in damages, R.A. 180, because it reached this monetary amount by accepting Davenport's material facts that the Town disputed and failed to set off the Town's costs, which Davenport failed to effectively dispute, related to Davenport's use and occupancy of the Property after the Town took absolute title.

### a.  The Town is Not Claiming Affirmative Damages.

The Town is not claiming entitlement to damages as Davenport states in his brief. *Compare* Davenport's Brief at 20, *with* Town's Brief at 30.[5] Instead, the Town raised affirmative defenses that any award of damages in Davenport's favor must be equitably offset due to unclean hands as Davenport obtained a benefit for which he paid no consideration (Second Affirmative Defense) and that any

---

[5] "The Town is not asking this Court, or the District Court, to find that Davenport owes any money to the Town."

damages must be reduced for his unjust enrichment (Third Affirmative Defense). R.A. 14. The Town supported its defenses with undisputed evidence of the Town's costs including taxes, utilities, and costs associated with Davenport's use and occupancy of the Property, R.A. 44-79, and the Department of Housing and Urban Development's ("HUD") fair market rents for rental properties in the Boston-Cambridge- Quincy, MA-NH HUD Metro FMR Area. R.A. 80-158. Thus, the Town asserts that the District Court failed to take into consideration the Town's undisputed costs associated with Davenport living at the Property, for free, from May 1, 2014, to September 30, 2022, and while the Town incurred additional expenses related to his use of the Property.

### b. Davenport Failed to Dispute the Town's Facts Related to Offset Costs.

Summary judgment may only enter if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Here, the Town disputed Davenport's assertion as to the fact that the sale proceeds were $219,453.52. R.A. 161. The Town supplied its calculation relative to the proceeds in Facts ##33 and 34 to support its assertion. R.A. 170. Davenport failed to properly dispute the Town's calculation of its costs spent during Davenport's use and occupancy of the Property. Davenport merely responded that Facts ##33 and 34 were disputed but failed to cite to any evidence that calls their veracity into question, rather, he provides brief arguments

indicating why the District Court should not accept them. R.A. 170. Davenport fell short of his burden to demonstrate that there are genuine disputes of Facts ##33 and 34. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (merely alleging a factual dispute, without providing contrary evidence, is not enough).

The District Court therefore erred in two ways when it accepted Davenport's version of the facts: (1) it rendered a decision based on disputed material facts, failing to address why it accepted Davenport's alleged damages when the Town disputed those facts, *see Súarez v. Pueblo International, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000) (In reviewing summary judgment orders, Court only free to ignore conclusory allegations, improbable inferences, and unsupported speculation, but must view entire record in light most favorable to opposing party) (other citations omitted), and (2) given the disputed nature of such material facts it made an impermissible credibility determination by weighing the evidence of damages in Davenport's favor. R.A. 161 (Response to Fact # 9).

### c.   The Town is Entitled to Offsets for Unjust Enrichment.

In Massachusetts, unjust enrichment is defined as the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329, 833 N.E.2d 171 (2005), quoting *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F.Supp. 340, 347 (D. Mass. 1982). To show unjust enrichment, the Town

must demonstrate (1) a benefit conferred upon Davenport by the Town, (2) an appreciation or knowledge by Davenport of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc*., 552 F.3d 47, 57 (1st Cir. 2009). Here, the Town has met these elements and is entitled to a setoff of Davenport's damages, if any.

The Town clearly conferred a benefit on Davenport by allowing him to live at the Property from May 1, 2014 to September 30, 2022 without charging him for taxes, utilities, rent, and other regular use and occupancy costs. R.A. 174 (Fact 26). Davenport indeed knew he was living at the Property for free because a Deputy Sheriff served him with copies of the Town's Land Court tax taking proceeding on January 24, 2014, R.A. 173 (Fact 21), and on May 21, 2014, the Town recorded the Land Court judgment of foreclosure with the Registry of Deeds. *See Devine v. Town of Nantucket*, 449 Mass. 499, 511, 870 N.E.2d 591, 600 (2007) ("Ordinarily, constructive notice can be effected by recording the order of taking in the registry of deeds."). Thus, Davenport knew, whether by actual or constructive notice, that his Property had been taken and foreclosed upon, and any reasonable person would know of the benefits of being allowed to reside at a foreclosed property for years without having to pay the regular associated costs of doing so.

Finally, it would be inequitable for the Court to ignore, as the District Court did, that the Town's attested measure of the value conferred on Davenport was $507,989.26, an amount exceeding the $400,000 in proceeds from the sale of the Property. While the Town is not asking the Court to award this excess amount, it would be inequitable for the Court to not offset the Town's costs. Absent such an offset, the Reading taxpayers would be paying Davenport twice – the costs associated with his years of free living, and, a payment of damages without consideration of the undisputed financial costs the Town has already expended. Therefore, Davenport was unjustly enriched during the time he lived at the Property after May 1, 2014, and the District Court erred in not setting off the Town's costs when measuring Davenport's damages.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the Town of Reading's principal Brief, the District Court's judgment is erroneous and must be reversed. Summary judgment must be entered in the Town's favor on Davenport's Fifth Amendment claim, or in the alternative, this action should be remanded to the District Court for trial on the proper measure of damages.

Respectfully submitted,

By the Defendant-Appellant,
TOWN OF READING,
By its attorneys,


/s/ Ethan Dively
Ivria G. Fried, First Circuit #1176846
Ethan B. Dively, First Circuit #1214606
Anthony J. Riley, First Circuit #1186156
HARRINGTON HEEP LLP
40 Grove Street, Suite 190
Wellesley, MA 02482
(617) 489-1600
ifried@harringtonheep.com
edively@harringtonheep.com
ajriley@harringtonheep.com


**CERTIFICATE OF COMPLIANCE**

I, Ethan B, Dively, hereby certify that this Reply Brief complies with the word-count provision set forth in Local Rule 28 (c) of the United States Court of Appeals for the First Circuit Rulebook, because excluding the parts of the document exempted by Rule 32(f), Fed. R. App. P., this document contains no more than 4,084 words, and this Reply Brief complies with Rule 32(a)(7), Fed. R. App. P., as it is no longer than 15 pages using 14-point font.

Date: March 17, 2025                    /s/ Ethan Dively
                                        Ethan B. Dively

**CERTIFICATE OF SERVICE**

I, Ethan B. Dively, hereby certify that I served a copy of the forgoing Reply Brief through the Court's CM/EFC system and by email on this 17th day of March 2025 on Plaintiff-Appellee's counsel of record:

Carl E. D'Angio Jr., Esq.
Ioana Conley, Esq.
D'Angio Law Office
11 Spring Street
Waltham MA 02451
(781) 894-6028
dangiolaw@aol.com
ia.dangiolaw@gmail.com

Date: March 17, 2025

/s/ Ethan Dively
Ethan B. Dively

**T**ABLE OF **C**ONTENTS

Materials Required by Fed. R. App. P. 28(f):

Fifth Amendment ...........................................................................Add. 01

Mass. Gen. Laws ch. 60, § 64 ....................................................Add. 02

Mass. Gen. Laws ch. 60, § 75 ....................................................Add. 03

Mass. Gen. Laws ch. 60, § 77 ....................................................Add. 04

Mass. Gen. Laws ch. 244, § 1 .....................................................Add. 05

Mass. Gen. Laws ch. 244, § 14 ...................................................Add. 06

2024 Mass. Acts ch. 140, §§ 80-99, 212 & 250 ..........................Add. 09

Fed. R. Civ. P. 56 ........................................................................Add. 20

Copies of Unpublished Decisions Required by Fed. R. App. P. 32.1(b):

*Biesemeyer v. Mun. of Anchorage*, 3:23-cv-00185-SLG-KFR, slip opinion,
2024 WL 1480564 (D. Alaska Mar. 13, 2024).............................Add. 23

*Cavaluzzi v. Cnty. of Sullivan*, 23 Civ. 11067 (PAE), slip opinion,
2024 WL 5238644 (S.D. N.Y. Dec. 27, 2024) .............................Add. 36

*Foshee v. Lane Cnty.*, 6:24-cv-00447-MC, slip opinion,
2024 WL 3970663 (D. Or. Aug 26, 2024) ....................................Add. 46

*Ramsey v. Cty. Of Newburgh*, 23-cv-8599 (CS), slip opinion,
2024 WL 4444374 (S.D. N.Y. Oct. 8, 2024)..................................Add. 51

*Stehpen v. Murray*, 14-cv-4951 (MKB), slip opinion,
2016 WL 4402020 (E.D. N.Y Aug. 17, 2016) ...............................Add. 56

United States Code Annotated
  Constitution of the United States
    Annotated
      Amendment V. Grand Jury; Double Jeopardy; Self-Incrimination; Due Process; Takings

U.S.C.A. Const. Amend. V

Amendment V. Grand Jury Indictment for Capital Crimes; Double Jeopardy;
Self-Incrimination; Due Process of Law; Takings without Just Compensation

Currentness

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

<Historical notes and references are included in the full text document for this amendment.>

<For Notes of Decisions, see separate documents for clauses of this amendment:>

<USCA Const. Amend. V--Grand Jury clause>

<USCA Const. Amend. V--Double Jeopardy clause>

<USCA Const. Amend. V--Self-Incrimination clause>

<USCA Const. Amend. V-- Due Process clause>

<USCA Const. Amend. V--Takings clause>

U.S.C.A. Const. Amend. V, USCA CONST Amend. V
Current through P.L. 119-1. Some statute sections may be more current, see credits for details.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add. 1

🚩 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

Massachusetts General Laws Annotated
  Part I. Administration of the Government (Ch. 1-182)
    Title IX. Taxation (Ch. 58-65c)
      Chapter 60. Collection of Local Taxes (Refs & Annos)

M.G.L.A. 60 § 64

§ 64. Absolute title after foreclosure

Currentness

<[ Text of section effective until November 1, 2024. For text effective November 1, 2024, see below.]>

The title conveyed by a tax collector's deed or by a taking of land for taxes shall be absolute after foreclosure of the right of redemption by decree of the land court as provided in this chapter. The land court shall have exclusive jurisdiction of the foreclosure of all rights of redemption from titles conveyed by a tax collector's deed or a taking of land for taxes, in a proceeding provided for in sections sixty-five to seventy-five, inclusive.

**§ 64. Absolute title after foreclosure; right to receive excess equity**

<[ Text of section as amended by 2024, 140, Sec. 92 effective November 1, 2024.
See 2024, 140, Sec. 250. For text effective until November 1, 2024, see above.]>

The land court shall have exclusive jurisdiction of the foreclosure of all rights of redemption from titles conveyed by a tax collector's deed or a taking of land for taxes in a proceeding held pursuant to sections 65 to 75, inclusive. The title conveyed by a tax collector's deed or by a taking of land for taxes shall be absolute after foreclosure of the right of redemption by judgment of the land court as provided in this chapter; provided, however, that the entry by the land court of a judgment of foreclosure of the right of redemption shall not impair or limit the right of the owner of the land at the time of foreclosure, and of those holding an interest in the land at the time of foreclosure and their heirs, successors and assigns, to receive any excess equity and subject to the requirements of section 64A. Any sale or retention of property by a municipality or other foreclosing entity pursuant to this chapter shall be subject to the requirements of said section 64A.

**Credits**
Amended by St.2024, c. 140, § 92, eff. Nov. 1, 2024.

Notes of Decisions (25)

M.G.L.A. 60 § 64, MA ST 60 § 64
Current through Chapter 284 of the 2024 2nd Annual Session. Some sections may be more current, see credits for details.

Add. 2

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

Massachusetts General Laws Annotated
    Part I. Administration of the Government (Ch. 1-182)
        Title IX. Taxation (Ch. 58-65c)
            Chapter 60. Collection of Local Taxes (Refs & Annos)

M.G.L.A. 60 § 75

§ 75. Practice and procedure

Currentness

<[ Text of section effective until November 1, 2024. For text effective November 1, 2024, see below.]>

Practice and procedure under sections sixty-four to seventy-three, inclusive, sections seventy-six, seventy-six A, and eighty B, not therein otherwise provided for, shall conform as nearly as possible to the land court practice, rules, regulations and procedure under chapter one hundred and eighty-five insofar as the same may be applicable, except that no memorandum stating the disposition of the case shall be made. Notice of filing the petition shall be recorded in the registry of deeds as provided for in land registration proceedings, and all final decrees shall be recorded.

**§ 75. Practice and procedure**

<[ Text of section as amended by 2024, 140, Sec. 96 effective November 1, 2024.
See 2024, 140, Sec. 250. For text effective until November 1, 2024, see above.]>

Practice and procedure under sections sixty-four to seventy-three, inclusive, sections seventy-six, seventy-six A, and eighty B, not therein otherwise provided for, shall conform as nearly as possible to the land court practice, rules, regulations and procedure under chapter one hundred and eighty-five insofar as the same may be applicable, except that no memorandum stating the disposition of the case shall be made. Notice of filing the petition shall be recorded in the registry of deeds as provided for in land registration proceedings, and all final decrees shall be recorded. The notices shall be prepared by the department of revenue, in language understandable by a least sophisticated consumer, together with a notice in the 7 most commonly spoken languages in the commonwealth, that this notice affects important legal rights and should be translated immediately.

**Credits**
Amended by St.1936, c. 189, § 1; St.1973, c. 515, § 2; St.2024, c. 140, § 96, eff. Nov. 1, 2024.

Notes of Decisions (1)

M.G.L.A. 60 § 75, MA ST 60 § 75
Current through Chapter 284 of the 2024 2nd Annual Session. Some sections may be more current, see credits for details.

End of Document                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add. 3

Massachusetts General Laws Annotated
    Part I. Administration of the Government (Ch. 1-182)
        Title IX. Taxation (Ch. 58-65c)
            Chapter 60. Collection of Local Taxes (Refs & Annos)

M.G.L.A. 60 § 77

§ 77. Foreclosure by municipalities; tax titles; covenants calling for money payments by owners

Currentness

After foreclosure by a town of the rights of redemption under a tax title or taking, as hereinbefore provided, the land shall thereafter be held and disposed of like any land belonging to it and held for municipal purposes, and shall not while so held be assessed for taxes.

Before foreclosure so much of the provisions of any covenant or agreement running with the land as calls for the payment of money by the owner thereof shall not be enforceable against a city or town which is the owner of record of the land under a tax title or taking, except during any period in which the city or town directly or indirectly in any capacity accepts or receives the benefit of such covenant or agreement or of any right or privilege created or affected thereby.

**Credits**

Amended by St.1938, c. 339, § 3; St.1953, c. 654, § 37; St.1978, c. 514, § 86; St.1986, c. 557, § 69; St.2016, c. 218, § 166, eff. Nov. 7, 2016.

Notes of Decisions (9)

M.G.L.A. 60 § 77, MA ST 60 § 77
Current through Chapter 284 of the 2024 2nd Annual Session. Some sections may be more current, see credits for details.

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add. 4

Massachusetts General Laws Annotated
    Part III. Courts, Judicial Officers and Proceedings in Civil Cases (Ch. 211-262)
        Title III. Remedies Relating to Real Property (Ch. 237-245)
            Chapter 244. Foreclosure and Redemption of Mortgages (Refs & Annos)

M.G.L.A. 244 § 1

§ 1. Foreclosure by entry or action; continued possession

Currentness

A mortgagee may, after breach of condition of a mortgage of land, recover possession of the land mortgaged by an open and peaceable entry thereon, if not opposed by the mortgagor or other person claiming it, or by action under this chapter; and possession so obtained, if continued peaceably for three years from the date of recording of the memorandum or certificate as provided in section two, shall forever foreclose the right of redemption.

**Credits**

Amended by St.1991, c. 157, § 2.

Notes of Decisions (144)

M.G.L.A. 244 § 1, MA ST 244 § 1
Current through Chapter 284 of the 2024 2nd Annual Session. Some sections may be more current, see credits for details.

**End of Document**                                  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add. 5

Massachusetts General Laws Annotated
    Part III. Courts, Judicial Officers and Proceedings in Civil Cases (Ch. 211-262)
        Title III. Remedies Relating to Real Property (Ch. 237-245)
            Chapter 244. Foreclosure and Redemption of Mortgages (Refs & Annos)

M.G.L.A. 244 § 14

§ 14. Foreclosure under power of sale; procedure; notice; form

Currentness

The mortgagee or person having estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person, may, upon breach of condition and without action, perform all acts authorized or required by the power of sale; provided, however, that no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, notice of the sale has been published once in each of 3 successive weeks, the first publication of which shall be not less than 21 days before the day of sale, in a newspaper published in the city or town where the land lies or in a newspaper with general circulation in the city or town where the land lies and notice of the sale has been sent by registered mail to the owner or owners of record of the equity of redemption as of 30 days prior to the date of sale, said notice to be mailed by registered mail at least 14 days prior to the date of sale to said owner or owners to the address set forth in section 61 of chapter 185, if the land is then registered or, in the case of unregistered land, to the last address of the owner or owners of the equity of redemption appearing on the records of the holder of the mortgage, if any, or if none, to the address of the owner or owners as given on the deed or on the petition for probate by which the owner or owners acquired title, if any, or if in either case no owner appears, then mailed by registered mail to the address to which the tax collector last sent the tax bill for the mortgaged premises to be sold, or if no tax bill has been sent for the last preceding 3 years, then mailed by registered mail to the address of any of the parcels of property in the name of said owner of record which are to be sold under the power of sale and unless a copy of said notice of sale has been sent by registered mail to all persons of record as of 30 days prior to the date of sale holding an interest in the property junior to the mortgage being foreclosed, said notice to be mailed at least 14 days prior to the date of sale to each such person at the address of such person set forth in any document evidencing the interest or to the last address of such person known to the mortgagee. Any person of record as of 30 days prior to the date of sale holding an interest in the property junior to the mortgage being foreclosed may waive at any time, whether prior or subsequent to the date of sale, the right to receive notice by mail to such person under this section and such waiver shall constitute compliance with such notice requirement for all purposes. If no newspaper is published in such city or town, or if there is no newspaper with general circulation in the city or town where the land lies, notice may be published in a newspaper published in the county where the land lies, and this provision shall be implied in every power of sale mortgage in which it is not expressly set forth. A newspaper which by its title page purports to be printed or published in such city, town or county, and having a circulation in that city, town or county, shall be sufficient for the purposes of this section.

The following form of foreclosure notice may be used and may be altered as circumstances require; but nothing in this section shall be construed to prevent the use of other forms.

(Form.)

MORTGAGEE'S SALE OF REAL ESTATE.

By virtue and in execution of the Power of Sale contained in a certain mortgage given by............ to............ dated............ and recorded with

Add. 6

.....

Deeds, Book............, page............, of which mortgage the undersigned is the present holder,.............

(If by assignment, or in any fiduciary capacity, give reference to the assignment or assignments recorded with .....Deeds, Book............, page............, of which mortgage the undersigned is the present holder,............).

for breach of the conditions of said mortgage and for the purpose of foreclosing the same will be sold at Public Auction at............o'clock,............ M. on the............ day of............ A.D. (insert year),............ (place)............ all and singular the premises described in said mortgage,

(In case of partial releases, state exceptions.)

To wit: "(Description as in the mortgage, including all references to title, restrictions, encumbrances, etc., as made in the mortgage.)"

Terms of sale: (State here the amount, if any, to be paid in cash by the purchaser at the time and place of the sale, and the time or times for payment of the balance or the whole as the case may be.)

Other terms to be announced at the sale.

(Signed) _____

Present holder of said mortgage._____

A notice of sale in the above form, published in accordance with the power in the mortgage and with this chapter, together with such other or further notice, if any, as is required by the mortgage, shall be a sufficient notice of the sale; and the premises shall be deemed to have been sold and the deed thereunder shall convey the premises, subject to and with the benefit of all restrictions, easements, improvements, outstanding tax titles, municipal or other public taxes, assessments, liens or claims in the nature of liens, and existing encumbrances of record created prior to the mortgage, whether or not reference to such restrictions, easements, improvements, liens or encumbrances is made in the deed; provided, however, that no purchaser at the sale shall be bound to complete the purchase if there are encumbrances, other than those named in the mortgage and included in the notice of sale, which are not stated at the sale and included in the auctioneer's contract with the purchaser.

For purposes of this section and section 21 of chapter 183, in the event a mortgagee holds a mortgage pursuant to an assignment, no notice under this section shall be valid unless (i) at the time such notice is mailed, an assignment, or a chain of assignments, evidencing the assignment of the mortgage to the foreclosing mortgagee has been duly recorded in the registry of deeds for the county or district where the land lies and (ii) the recording information for all recorded assignments is referenced in the notice of sale required in this section. The notice shall not be defective if any holder within the chain of assignments either changed its name or merged into another entity during the time it was the mortgage holder; provided, that recited within the body of the notice is the fact of any merger, consolidation, amendment, conversion or acquisition of assets causing the change in name or identity, the recital of which shall be conclusive in favor of any bona fide purchaser, mortgagee, lienholder or encumbrancer of value relying in good faith on such recital.

**Credits**
Amended by St.1975, c. 342; St.1977, c. 629; St.1980, c. 318, § 2; St.1981, c. 242; St.1981, c. 795, § 11; St.1991, c. 157, §§ 4, 5; St.1992, c. 285; St.1992, c. 287; St.1998, c. 463, § 181; St.2012, c. 194, § 1, eff. Nov. 1, 2012.

Add. 7

Notes of Decisions (337)

M.G.L.A. 244 § 14, MA ST 244 § 14
Current through Chapter 284 of the 2024 2nd Annual Session. Some sections may be more current, see credits for details.

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add. 8

2024 Mass. Legis. Serv. Ch. 140 (H.B. 4800) (WEST)
**SEE VETO INFORMATION AT END OF DOCUMENT**

MASSACHUSETTS 2024 LEGISLATIVE SERVICE

General Court, 2024 Second Annual Session

Additions and deletions are not identified in this document.
Vetoes are indicated by ~~Text~~ ;
stricken material by ~~**Text**~~ .

CHAPTER 140

H.B. No. 4800

< [For vetoes, reductions and sections returned for amendment, see the Governor's message following this chapter.] >

AN ACT making appropriations for the fiscal year 2025 for the maintenance of the departments,
boards, commissions, institutions, and certain activities of the commonwealth, for interest,
sinking fund, and serial bond requirements, and for certain permanent improvements.
*Whereas,* The deferred operation of this act would tend to defeat its purpose, which is to is immediately to make
appropriations for the fiscal year beginning July 1, 2024, and to make certain changes in law, each of which is
immediately necessary or appropriate to effectuate said appropriations or for other important public purposes, therefore
it is hereby declared to be an emergency law, necessary for the immediate preservation of the public convenience.

Be it enacted by the Senate and House of Representatives in General
Court assembled, and by the authority of the same, as follows:

SECTION 1. To provide for the operations of the several departments, boards, commissions and institutions of the commonwealth and other services of the commonwealth and for certain permanent improvements and to meet certain requirements of law, the sums set forth in this act, for the several purposes and subject to the conditions specified, are hereby appropriated from the General Fund unless specifically designated otherwise, subject to the laws regulating the disbursement of public funds and the approval thereof for the fiscal year ending June 30, 2025. All sums appropriated under this act, including supplemental and deficiency budgets, shall be expended in a manner reflecting and encouraging a policy of nondiscrimination and equal opportunity for members of minority groups, women and persons with a disability. All officials and employees of an agency, board, department, commission or division receiving funds under this act shall take affirmative steps to ensure equality of opportunity in the internal affairs of state government and in their relations with the public, including those persons and organizations doing business with the commonwealth. Bach agency, board, department, commission and division of the commonwealth, in spending appropriated sums and discharging its statutory responsibilities, shall adopt measures to ensure equal opportunity in the areas of hiring, promotion, demotion or transfer, recruitment, layoff or termination, rates of compensation, in-service or apprenticeship training programs and all other terms and conditions of employment.

SECTION 1A. In accordance with Articles LXIII and CVII of the Articles of Amendment to the Constitution of the Commonwealth and section 6D of chapter 29 of the General Laws, it is hereby declared that the amounts of revenue set forth in this section, by source, for the respective funds of the commonwealth for the fiscal year ending June 30, 2025 are necessary and sufficient to provide the means to defray the appropriations and expenditures from such funds for fiscal year 2025 as set forth and authorized in this act. The comptroller shall keep a distinct account of actual receipts from each such source by each such fund to furnish the executive office for administration and finance and the house and senate committees on ways and means with quarterly statements comparing those receipts with the projected receipts set forth in this section and shall include a full

Add. 9

SECTION 80. Section 1 of chapter 60 of the General Laws, as so appearing, is hereby amended by inserting after the definition of "Collector" the following 2 definitions:-

<< MA ST 60 § 1 >>

"Excess equity", any remaining surplus amount above the taxes, interest, fees and charges of keeping, as reflected in the tax title account balance as of the date of the foreclosure judgment, and the fees, expenses, charges and costs actually and reasonably incurred in selling or appraising the property in accordance with section 64A following a final judgment of foreclosure; provided, however, that where the property is sold in accordance with said section 64A, the excess equity shall be determined by deducting from the gross sale proceeds: (i) the tax title balance as of the date of the foreclosure judgment; (ii) any unpaid property tax, assessments for unpaid water and sewer charges, property insurance and homeowners' association or condominium fees accruing from the date of foreclosure; and (iii) any documented, post-judgment costs incurred by the judgment holder from the sale of the property including, but not limited to, broker or real estate agent fees or commissions, listing fees, marketing and advertising costs, legal fees, litigation fees and costs, closing costs, transfer fees, auctioneer fees, notice to property owner, appraisal fees, publication costs, property management, emergency demolition, environmental fees and other fees, charges or costs directly or indirectly related to the maintenance, marketing and sale of the property; provided further, that where the property is retained by the judgment holder in accordance with said section 64A, the excess equity shall be determined by deducting the tax title account balance as of the date of the foreclosure judgment and any documented post-judgment costs of appraisal incurred by the judgment holder from the appraised highest and best use value of the property as of the date of the final judgment of foreclosure.

"Language understandable by a least sophisticated consumer", language that complies with the standard for evaluating truth and deception under the Fair Debt Collection Practices Act, 15 U.S.C. section 1692 et seq., as summarized in Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985).

SECTION 81. Subsection (c) of section 2C of said chapter 60, as so appearing, is hereby amended by striking out paragraph (9) and inserting in place thereof the following paragraph:-

<< MA ST 60 § 2C >>

(9) A purchaser owning any tax receivable shall give notice to a taxpayer, and to the appropriate municipality, within 12 business days of purchasing that tax receivable. The notice shall include the name, address, telephone number and preferred method of communication with the purchaser and any service agent acting on behalf of the purchaser. If the purchaser or the service agent of such tax receivables shall change, the new purchaser or service agent shall provide the notice required herein within 12 business days of the effective date of such change. Where the land is Class one, residential property, as defined in section 2A of chapter 59, such notice shall: (i) be mailed and addressed to the taxpayer at their last known residence and usual place of abode or place of business; (ii) be posted upon the Class one, residential property; (iii) be posted in a convenient and public place; and (iv) include a uniform notice prepared by the commissioner of revenue, in language understandable by a least sophisticated consumer, together with a notice in the 7 most commonly spoken languages in the commonwealth that the notice affects important legal rights and should be translated immediately. The notice shall state:

(i) that a complaint to foreclose the tax title may be filed on or after a specific date;

(ii) that the tax title has been sold to a purchaser of tax receivables;

(iii) why the property was taken and that the owner may redeem the property up until the property is foreclosed by a judgment issued on a proceeding before the land court;

(iv) the components of the amount as of the date of the notice, subject to accumulating taxes, fees and charges, required to redeem the property and the procedure for redemption;

Add. 10

(v) that if a complaint to foreclose the tax title is filed and the owner does not respond by filing an answer, the court may enter an order defaulting the owner;

(vi) that if a complaint to foreclose the tax title is filed, the owner may respond by filing an answer that requests that the court set the terms by which the owner may redeem the property;

(vii) that if the property is not redeemed, the purchaser is entitled to receive a judgment from the land court that transfers title to the property to the town or purchaser and permanently eliminates any title rights the owner has in the property; and

(viii) that following a foreclosure of the property, the former owner shall be entitled to any excess equity in the property, upon written request to the municipality or purchaser of tax receivables, pursuant to section 64A.

SECTION 82. Said chapter 60 is hereby further amended by striking out section 16, as so appearing, and inserting in place thereof the following section:-

<< MA ST 60 § 16 >>

Section 16. The collector shall, before selling the land of a resident or non-resident or distraining the goods of any person, serve on the person a statement of the amount thereof with a demand for its payment. If 2 or more parcels of land are assessed in the name of a resident, or non-resident, the statement of the aggregate amount of the taxes thereon may be made in 1 demand. Such demand may also include taxes due on account of tangible personal property and any motor vehicle excise tax. If the heirs of a deceased person, co-partners or 2 or more persons are jointly assessed, service shall be required for only 1 of the persons. Such demand for the tax upon land may be made upon the person occupying the same on January first of the year in which the tax is assessed. No demand shall be required to be made on a mortgagee, unless the mortgagee has given notice under section 38, in which case no demand shall be required to be made on the owner or occupant. Demand shall be made by the collector by mailing the same to the taxpayer at taxpayer's last known residence and usual place of abode or place of business or to the address best known by the collector; provided, however, that failure to receive the demand notice shall not invalidate a tax or any proceedings for the enforcement or collection of the same; provided further, that if the land is Class one, residential property, as defined in section 2A of chapter 59, the demand shall include a uniform notice prepared by the department of revenue, in language understandable by a least sophisticated consumer, together with a notice in the 7 most commonly spoken languages in the commonwealth that this notice affects important legal rights and should be translated immediately, and providing clear notice that the nonpayment of property taxes can result in the taking of the property and that the property owner may be eligible for exemptions, abatements and tax deferrals and other assistance and should contact the local assessor's office, together with the address, telephone number, email address, if available, and internet address for further information.

<< MA ST 60 § 25 >>

SECTION 83. Section 25 of said chapter 60, as so appearing, is hereby amended by adding the following sentence:–The notice posted shall be prepared by the department of revenue, in language understandable by a least sophisticated consumer, together with a notice in the 7 most commonly spoken languages in the commonwealth that this notice affects important legal rights and should be translated immediately.

<< MA ST 60 § 52 >>

SECTION 84. Section 52 of said chapter 60, as so appearing, is hereby amended by inserting after the third sentence the following 2 sentences:–Where the land is Class one, residential property, as defined in section 2A of chapter 59, such notice shall: (i) be mailed to the taxpayer at their last known residence and usual place of abode or place of business; (ii) be posted upon the Class one, residential property; (iii) be posted in a convenient and public place; and (iv) include a uniform notice prepared

Add. 11

by the department of revenue, in language understandable by a least sophisticated consumer, together with a notice in the 7 most commonly spoken languages in the commonwealth, that this notice affects important legal rights and should be translated immediately. The notice shall state that the treasurer intends to sell the tax title to the owner's property, that the nonpayment of property taxes may result in the loss of the property and that the property owner may be eligible for exemptions, abatements and tax deferrals and other assistance and may contact the local assessor's office for further information, together with the telephone number, email address, if available and internet address for the local assessor.

<< MA ST 60 § 53 >>

SECTION 85. Section 53 of said chapter 60, as so appearing, is hereby amended by striking out, in line 4, the words ", which notice", and inserting in place thereof the following words:–; provided, however, that where the land is Class one, residential property, as defined in section 2A of chapter 59, such notice shall: (i) be mailed to the taxpayer at their last known residence and usual place of abode or place of business; (ii) be posted upon the Class one, residential property; and (iii) be published on the town or city website; provided further, that for any properties not Class one, residential the notice.

<< MA ST 60 § 53 >>

SECTION 86. The first paragraph of said section 53 of said chapter 60, as so appearing, is hereby amended by adding the following sentence:–A notice provided pursuant to this section shall be prepared by the department of revenue, in language understandable by a least sophisticated consumer, together with a notice in the 7 most commonly spoken languages in the commonwealth, that the notice affects important legal rights and should be translated immediately.

SECTION 87. Said section 53 of said chapter 60, as so appearing, is hereby further amended by adding the following paragraph:-

<< MA ST 60 § 53 >>

Where the land is Class one, residential property as defined in section 2A of chapter 59 all notices sent pursuant to this section shall include a uniform notice prepared by the department of revenue, together with a notice in the 7 most common languages in the commonwealth, that this notice affects important legal rights and should be translated immediately. Such notice shall state in language understandable by a least sophisticated consumer:

(i) what taxes or other municipal costs remain unpaid;

(ii) the taxpayer's right to redeem full ownership of the property and the components of the amount required to redeem the property;

(iii) that a complaint to foreclose the tax title may be filed on or after a specific date;

(iv) that the tax title may be sold to a purchaser of tax receivables;

(v) that if a complaint to foreclose the tax title is filed and the owner does not respond by filing an answer, the court may enter an order defaulting the owner;

(vi) that if a complaint to foreclose the tax title is filed, the owner may respond by filing an answer that requests that the court set the terms by which the owner may redeem the property;

(vii) that if the property is not redeemed, the town or purchaser is entitled to receive a judgment from the land court that transfers title of the property to the town or purchaser and permanently eliminates any title rights the owner has in the property; and

(viii) that following a foreclosure of the property, the former owner shall be entitled to any excess equity in the property, upon written request to the municipality or purchaser of tax receivables, pursuant to section 64A.

Add. 12

<< MA ST 60 § 62 >>

SECTION 88. Section 62 of said chapter 60, as so appearing, is hereby amended by striking out, in line 8, the word "sixteen" and inserting in place thereof the following figure:–8.

<< MA ST 60 § 62A >>

SECTION 89. Section 62A of said chapter 60, as so appearing, is hereby amended by striking out, in line 4, the figure, "5" and inserting in place thereof the following figure:–10.

<< MA ST 60 § 62A >>

SECTION 90. Said section 62A of said chapter 60, as so appearing, is hereby further amended by striking out, in lines 5 and 6, the words "not more than 50 per cent of".

<< MA ST 60 § 62A >>

SECTION 91. Said section 62A of said chapter 60, as so appearing, is hereby further amended by striking out, in line 12, the figure "25" and inserting in place thereof the following figure:–10.

SECTION 92. Said chapter 60 is hereby further amended by striking out section 64, as so appearing, and inserting in place thereof the following section:-

<< MA ST 60 § 64 >>

Section 64. The land court shall have exclusive jurisdiction of the foreclosure of all rights of redemption from titles conveyed by a tax collector's deed or a taking of land for taxes in a proceeding held pursuant to sections 65 to 75, inclusive. The title conveyed by a tax collector's deed or by a taking of land for taxes shall be absolute after foreclosure of the right of redemption by judgment of the land court as provided in this chapter; provided, however, that the entry by the land court of a judgment of foreclosure of the right of redemption shall not impair or limit the right of the owner of the land at the time of foreclosure, and of those holding an interest in the land at the time of foreclosure and their heirs, successors and assigns, to receive any excess equity and subject to the requirements of section 64A. Any sale or retention of property by a municipality or other foreclosing entity pursuant to this chapter shall be subject to the requirements of said section 64A.

SECTION 93. Said chapter 60 is hereby further amended by inserting after section 64 the following section:-

<< MA ST 60 § 64A >>

Section 64A. (a) This section shall apply to the sale or retention of property by a municipality or a purchaser of tax receivables following a final judgment of the land court foreclosing the right of redemption under this chapter. Not more than 14 days after the of entry of judgment foreclosing the right of redemption becomes final, with either no appeal having been taken within the applicable time limit or any appeal taken having resulted in the entry of judgment pursuant to the rescript of the supreme judicial court or appeals court, the judgment holder shall elect to: (i) retain possession of the property; or (ii) sell the property. The judgment holder shall notify the former owners of the property and all others known to hold the right of redemption in the property at the time judgment is entered, by certified mail, to their last known address or place of business, of: (i) the judgment holder's election; and (ii) the rights and procedures for claiming excess equity set forth in this section.

(b)(1) A municipality or a purchaser of tax receivables that has elected to retain the property under subsection (a), shall use reasonable best efforts to have the property appraised not later than 120 days after the final judgment of the land court; provided, however, that the judgment holder and any parties entitled to claim excess equity under this section may agree to a later date

Add. 13

for the appraisal. The appraisal shall be: (i) for the highest and best use of the property as of the date of the final judgment of foreclosure; and (ii) conducted by an independent appraiser licensed in the commonwealth in accordance with the usual and customary professional appraisal practices.

(2) The appraised value shall be used to establish the amount of excess equity, which shall be paid to any parties who make a valid claim for excess equity as set forth in this section.

(c)(1) A municipality or a purchaser of tax receivables that has elected to sell the property under subsection (a) shall, not later than 180 days after the final judgment of the land court, list the property for sale with a real estate agent or broker licensed in the commonwealth; provided, however, that the judgment holder and any parties entitled to claim excess equity under this section may agree to a later date for sale; provided further, that the real estate agent or broker shall not hold elected or appointed office or be employed by the municipality in which the property is located.

(2) The judgment holder for a property listed for sale pursuant to paragraph (1) that does not sell within 12 months of the date of listing shall: (i) auction the property with an auctioneer licensed in the commonwealth; provided, however, that the auctioneer does not hold elected or appointed office or is not employed by the municipality in which the property is located; (ii) accept bids that are not less than $^2/_3$ of the appraised value of the property consistent with the appraisal requirements of subsection (b); and (iii) not accept bids by individuals that hold elected or appointed office or are employed by the municipality in which the property is located.

(3) A property shall not be considered retained by a judgment holder that has elected under subsection (a) to sell the property and has complied with the requirements of paragraph (2) but has been without success in such sale. If a property has not been sold after the auction, the judgment holder shall notify any parties entitled to claim excess equity of their intention to continue the sale to another date and not to retain the property. Such notice shall be mailed, by certified mail, to any parties entitled to claim excess equity, or their successors in interest, to their last known address or place of business.

(d)(1) upon a sale of a property or an appraisal of property where the judgment holder has elected to retain possession, the judgment holder shall prepare a written itemized accounting setting forth the disposition of the proceeds arising from the sale or a report of the appraisal including, but not limited to, the sale price, legal fees, marketing fees, auctioneer fees, advertising costs, appraisal fees and any excess equity due to any parties entitled to claim excess equity, or their successors in interest. The written itemized accounting shall be mailed, by certified mail, to any parties entitled to claim excess equity, or their successors in interest, to their last known address or place of business, not more than 30 days after the sale of the property or receipt of the appraisal of the property if such property is retained.

(2) Where the judgment holder knows the identity and mailing address of the former property owner and all others known to hold the right of redemption in the property, the judgment holder shall, in addition to the written itemized accounting, provide for the provision of a proportional share of the excess equity to which such individual is entitled.

(3) A judgment holder that does not know the identity and mailing address of the former property owner and all others known to hold the right of redemption in the property shall, in addition to the written itemized accounting, provide a notice that the former owners of the property and all others known to hold the right of redemption in the property at the time judgment of foreclosure entered in the land court, or their successors in interest, may claim excess equity from the sale or retention of the property and that such claims shall be submitted in writing to the judgment holder not more than 18 months after the date of the notice. The excess equity claim shall be delivered to the judgment holder by personal service, receipt of which is acknowledged by the judgment holder, or by certified mail, return receipt requested; provided, however, that a municipality shall allow a claimant to submit a claim at the local collector's office. The excess equity claim shall contain the claimant's name, telephone number, mailing address, the property address or parcel number and a description of their interest in the property and shall include any other persons or entities known to the claimant to have an interest in the property at the time of the final judgment of foreclosure,

Add. 14

including any other former owners, mortgagees, lienholders, heirs or other individuals or entities who held a right to redeem or their successors in interests.

(e) Excess equity shall be held in escrow by the judgment holder in a segregated interest-bearing account, in which all excess equity funds from all foreclosures are deposited and separately accounted for on the books and records of the municipality. Excess equity that has not been claimed within 19 months of a sale or appraisal of a property shall be disposed of pursuant to chapter 200A.

(f) The superior court shall have jurisdiction to hear any disputes that arise between or among the judgment holder and any former owners, mortgagees, lienholders, heirs or other individuals or entities who, at the time of the final judgment of the land court, held an interest in the property and right to redeem, or their successors in interest, and who are claiming excess equity including, but not limited to, disputes regarding the valuation of the property, the sale process, the amount of excess equity, its distribution or any other aspect of this section. Any party may seek a determination of the dispute by filing a written complaint in the superior court not more than 12 months after the date of the notice of written itemized accounting following sale or appraisal of the property under subsection (d). Such complaint shall name all parties adversely interested who are known to the plaintiff and process shall issue and service be made consistent with the Massachusetts Rules of Civil Procedure. All matters pertaining to the litigation shall be heard by the superior court department and the parties shall be granted the right to a trial before a jury, unless all parties waive that right and file a written agreement requesting a trial without a jury.

<< MA ST 60 § 65 >>

SECTION 94. Section 65 of said chapter 60, as appearing in the 2022 Official Edition, is hereby amended by striking out, in line 4, the word "six" and inserting in place the following figure:–12.

SECTION 95. Said chapter 60 is hereby further amended by striking out section 69A, as so appearing, and inserting in place thereof the following section:-

<< MA ST 60 § 69A >>

Section 69A. The land court may grant a motion to vacate a decree of foreclosure brought by any interested person other than the petitioner under section 65 within 1 year after the final entry of the decree if presented with extraordinary circumstances and if: (i) no innocent purchaser has acquired an interest in the property for value; or (ii) no claim for excess equity has been paid pursuant to section 64A, unless the court makes appropriate equitable orders to protect the rights of the purchaser of the property or the payor of the excess equity. If the foreclosure petition was filed for an unoccupied or abandoned building as set forth in sections 1 and 81A or if there has been a certification pursuant to section 81B that the redemption amount as determined pursuant to section 62 exceeds the assessed value of the parcel, no petition to vacate a decree of foreclosure entered under section 69 and no proceedings at law or in equity for reversing or modifying such a decree shall be commenced by any person other than the petitioner except within 90 calendar days after the final entry of the decree or within 1 year of the final entry of the decree, if the decree was entered prior to the effective date of this section. For any decree relating to a property for which record title stands in the name of a deceased person or person under guardianship or conservatorship, a petition may be maintained for reversal or modification of such decree up to 1 year from the date of decree.

No motion to vacate a decree of foreclosure and no proceeding at law or in equity for reversing or modifying such a decree shall be commenced by any person other than the petitioner under section 65 after 1 year, except upon a showing that the moving party's due process rights have been violated.

If a decree of foreclosure is vacated pursuant to this section, all rights and obligations set forth in section 64A shall be suspended and any proceedings instituted in the superior court regarding excess equity shall be dismissed.

Add. 15

<< MA ST 60 § 75 >>

SECTION 96. Section 75 of said chapter 60, as so appearing, is hereby amended by adding the following sentence:– The notices shall be prepared by the department of revenue, in language understandable by a least sophisticated consumer, together with a notice in the 7 most commonly spoken languages in the commonwealth, that this notice affects important legal rights and should be translated immediately.

<< MA ST 60 § 77B >>

SECTION 97. The second paragraph of section 77B of said chapter 60, as so appearing, is hereby amended by inserting after the second sentence the following sentence:–The notice shall also include the affirmative statement that the custodian will, following a completed sale, provide to such owner a written notice containing an itemized accounting of the disposition of the proceeds arising from the sale, including the sale price, legal fees, auctioneer fees and advertising costs, other fees and any excess equity due to the owner within 30 days after the receipt of such funds.

<< MA ST 60 § 77B >>

SECTION 98. Said section 77B of said chapter 60, as so appearing, is hereby further amended by inserting after the word "law", in line 36, the following words:–, so long as the accounting provisions of this section and section 64A are satisfied.

<< MA ST 60 § 77B >>

SECTION 99. Said section 77B of said chapter 60, as so appearing, is hereby further amended by striking out the fourth paragraph.

<< MA ST 62 § 1 >>

SECTION 100. Section 1 of chapter 62 of the General Laws, as so appearing, is hereby amended by striking out, in line 6, the figure "2022" and inserting in place thereof the following figure:–2024.

<< MA ST 62 § 3 >>

SECTION 101. Paragraph (a) of Part B of section 3 of said chapter 62, as amended by section 7 of chapter 50 of the acts of 2023, is hereby amended by striking out subparagraph (6).

SECTION 102. Section 6 of said chapter 62 is hereby amended by striking out subsection (i), as amended by sections 12 to 15, inclusive, of chapter 50 of the acts of 2023, and inserting in place thereof the following subsection:-

<< MA ST 62 § 6 >>

(i) Any owner of residential property located in the commonwealth who is not a dependent of another taxpayer and who occupies said property as their principal residence, shall be allowed a credit equal to 60 per cent of the expenditures for design and construction expenses for the repair, replacement or upgrade of a cesspool or septic system or connection to a sanitary sewer collection system, if such repair, replacement, upgrade or sewer connection is required pursuant to the provisions of Title 5 of the state environmental code, a watershed permit issued by the department of environmental protection or other requirements or conditions for implementation of the watershed permit imposed by the permittee or the department of environmental protection. Said expenditures shall be the actual cost to the taxpayer or $30,000, whichever is less; provided, however, that said credit shall be available to eligible taxpayers beginning in the tax year in which the repair, replacement, upgrade or sewer connection was completed; and provided further, that said credit shall not exceed $4,000 in any tax year and any excess credit may be applied over the following 5 subsequent tax years up to an aggregate maximum of $18,000. The department shall promulgate such rules and regulations as are necessary to administer the credit afforded by this subsection, including, but not limited to,

Add. 16

of subsection (d) of said section 13T of said chapter 23A for fiscal year 2025 shall be distributed not later than December 1, 2024 pursuant to a transfer schedule determined by the executive office for administration and finance.

SECTION 210. Notwithstanding any general or special law to the contrary, grants from the amounts collected pursuant to subsection (b) of section 13T of chapter 23A of the General Laws allocated to regional tourism councils pursuant to clause (ii) of subsection (d) of said section 13T of said chapter 23A for fiscal year 2024 shall be distributed not later than December 1, 2024 pursuant to a transfer schedule determined by the executive office for administration and finance.

SECTION 211. To meet the language access and inclusion notice requirements pursuant to sections 81 to 83, inclusive, and sections 86, 87, 93 and 96, the department of revenue shall evaluate every 10 years the 7 most commonly spoken languages of the commonwealth utilizing the most recent data from the decennial federal census. The department shall update and prepare notices in language understandable by a least sophisticated consumer and the 7 most commonly spoken languages in the commonwealth, as established by the most recent census data.

SECTION 212. A former owner or other previous holder of the right of redemption of property or their successors in interest, whose right of redemption was foreclosed upon by a final judgment of foreclosure entered on or after May 25, 2021, but before the effective date of this act, may file a written complaint in the superior court for the return of excess equity in accordance with section 64A of chapter 60 of the General Laws within 12 months after the effective date of this act; provided, however, that no claim for the return of excess equity may be asserted by any party where a land court judgment of foreclosure was entered and not appealed, on or before May 24, 2021.

SECTION 213. There shall be a special commission to conduct a comprehensive study relative to current law and practice around the collection of delinquent property tax revenue by cities and towns.

The commission shall consist of: the chairs of the joint committee on revenue or their designees, who shall serve as co-chairs; the commissioner of revenue or a designee; the chief justice of the land court department or a designee; the chief justice of the superior court department or a designee; 1 member who shall be appointed by the senate president; 1 member who shall be appointed by the speaker of the house of representatives; 1 member who shall be appointed by the minority leader of the house of representatives; 1 member who shall be appointed by the minority leader of the senate; 1 member who shall be appointed by the governor; the attorney general or a designee; the executive director of the Massachusetts Municipal Association Inc.; the president of the Massachusetts Collectors' and Treasurers' Association, Inc; a representative of third-party purchasers of tax receivables; and a representative on property owners' rights.

The commission shall file a report that shall include, but not be limited to:

(i) an examination and assessment of the current local property tax collection processes, including property owner notification and communication, property tax deferral options or exemptions that exist for special classes, third-party investor and any subsequent foreclosure proceedings;

(ii) an examination of the role of purchasers of tax receivables, including third-party purchasers of tax receivables, on the collection of delinquent property tax revenue and any recommended changes to the practice;

(iii) recommended changes to the current statutory interest rate for delinquent property taxes, if any, and the effect such changes would have on municipal operations and finances;

(iv) an examination of the revenue impact on cities and towns from former owners seeking to recover lost equity to which they may be entitled following the United States Supreme Court ruling in Tyler v. Hennepin County, 598 U.S. 631 (2023);

(v) recommended changes to the statute of limitations for such claims, if any;

Add. 17

<< Note: MA ST 29 § 2WWWWW; 118E § 69A >>

SECTION 246. Section 169 shall take effect on June 30, 2024.

<< Note: MA ST 64H § 6 >>

SECTION 247. Section 104 shall take effect 60 days after the effective date of this act.

<< Note: MA ST 29 § 2PPP; 29 § 2AAAAA; 29 § 2TTTTT; 29 § 2UUUUU; 118E § 64; 118E § 66; 118E § 67 >>

SECTION 248. Sections 49, 51, 121, 125, 128, 129, 168 and 239 shall take effect upon the later of (i) one full calendar month following the calendar month in which the secretary receives all federal approvals deemed necessary to implement said sections; or (ii) October 1, 2024.

<< Note: MA ST 127 § 171 >>

SECTION 249. Section 135 shall take effect on October 31, 2024.

<< Note: MA ST 60 § 1; 60 § 2C; 60 § 16; 60 § 25; 60 § 52; 60 § 53; 60 § 62; 60 § 62A; 60 § 64; 60 § 64A; 60 § 65; 60 § 69A; 60 § 75; 60 § 77B >>

SECTION 250. Sections 80 to 99, inclusive, shall take effect on November 1, 2024.

<< Note: MA ST 62 § 1; 62 § 3; 62C § 6 >>

SECTION 251. Section 100, 101 and 103 shall take effect for taxable years beginning on or after January 1, 2024.

<< Note: MA ST 6D § 6; 12C § 7; 111 § 24N; 118E § 64; 118E § 66; 118E § 68; 118E § 69A >>

<< Note: MA ST 12C § 7A; 29 § 2EEEEEE; 29 § 2FFFFFF; 29 § GGGGGG; 29 § HHHHHH; 29 § IIIIII >>

SECTION 252. Sections 4, 5, 18, 19, 20, 58, 111, 120, 121, 122, 123, 124, 126, 130 and 131 shall take effect upon the later of (i) one full calendar month following the calendar month in which the secretary receives all federal approvals deemed necessary to implement said sections; or (ii) January 1, 2025.

<< Note: MA ST 15D § 13A; 15D § 21 >>

SECTION 253. Section 32 and section 21 of chapter 15D of the General Laws, as inserted by section 36, shall take effect on January 15, 2025.

<< Note: MA ST 32A § 5; 32A § 6; 32A § 10 >>

<< Note: MA ST 15D § 20 >>

SECTION 254. Section 20 of chapter 15D of the General Laws, as inserted by section 36, and sections 71, 72 and 73 shall take effect on July 1, 2025.

<< Note: MA ST 29 § 2BBBBBB >>

SECTION 255. Section 57 shall take effect on July 31, 2025.

<< Note: MA ST 118E § 10F; 118E § 16C >>

Add. 18

SECTION 256. Sections 117, 118 and 119 shall take effect upon the earlier of: (i) the receipt of all necessary federal approvals, including state plan and 1115 demonstration amendments; or (ii) January 1, 2025.

SECTION 257. Section 244 shall take effect 18 months after the date of the first sale of an online lottery ticket or share consistent with the date pursuant to section 204.

<< Note: MA ST 118E § 66 >>

SECTION 258. Sections 127 and 242 shall take effect on October 1, 2027.

SECTION 259. Section 191 shall take effect on March 1, 2028.

SECTION 260. Section 245 shall take effect on October 1, 2028.

<< Note: MA ST 15D § 20 >>

SECTION 261. Subsection (c ½ ) of section 20 of chapter 15D of the General Laws, as inserted by section 36, is hereby repealed.

<< Note: MA ST 15D § 20 >>

SECTION 262. Section 261 shall take effect June 30, 2029.

SECTION 263. Section 238 shall take effect on January 1, 2030.

<< Note: MA ST 9 § 31; 10 § 24; 10 § 24A; 10 § 25; 10 § 26; 10 § 27; 10 § 27A; 10 § 31; 10 § 35III; 12 § 15; 15A § 9; 15D § 1A; 15D § 2; 15D § 3; 15D § 3A; 15D § 17; 22C § 25; 22C § 26; 22C § 27; 22C § 28; 23J § 2; 23K § 2; 23K § 26; 23K § 35; 29 § 2O; 29 § 2AAAA; 29 § 2BBBBBB; 29C § 19; 29C § 20; 30 § 39M; 30 § 58; 32 § 8; 36 § 41; 40A § 3; 46 § 13; 62 § 6; 69 § 1P; 94C § 1; 94C § 23; 111 § 53; 111 § 121B; 118E § 9D; 125 § 1; 127 § 171; 130 § 1A; 138 § 1; 138 § 64; 149 § 44A; 151A § 62A; 175M § 1; 175M § 7; 218 § 10; 258C § 3; 262 § 24; 164 § 139 >>

½ 15A § 5B 15A § 19F 15A § 19G 15A § 48 15A § 49 15D § 12B 22C § 26A 23A § 13V 32A § 17T 71 § 98A 90 § 8N 94C § 18D 115 § 18 118E § 83 118E § 84 138 § 79 175 § 47VV 176A § 8WW 176B § 4WW 176G § 4OO

SECTION 264. Except as otherwise specified, this act shall take effect on July 1, 2024.

**GOVERNOR'S VETO MESSAGE**

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

Approved July 29, 2024.

---

  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add. 19

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
    Title VII. Judgment

Federal Rules of Civil Procedure Rule 56

Rule 56. Summary Judgment [Rule Text & Notes of Decisions subdivisions I to XV]

Currentness

<**Amendments received through April 1, 2024**>

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 56 are displayed in multiple documents.>

**(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

**(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

**(c) Procedures.**

**(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

**(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

**(4)** ***Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

**(1)** defer considering the motion or deny it;

**(2)** allow time to obtain affidavits or declarations or to take discovery; or

**(3)** issue any other appropriate order.

**(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

**(1)** give an opportunity to properly support or address the fact;

**(2)** consider the fact undisputed for purposes of the motion;

**(3)** grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

**(4)** issue any other appropriate order.

**(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:

**(1)** grant summary judgment for a nonmovant;

**(2)** grant the motion on grounds not raised by a party; or

**(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

**(g) Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

Add. 21

**(h) Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009; April 28, 2010, effective December 1, 2010.)

**ADVISORY COMMITTEE NOTES**

1937 Adoption

This rule is applicable to all actions, including those against the United States or an officer or agency thereof.

Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact. It has been extensively used in England for more than 50 years and has been adopted in a number of American states. New York, for example, has made great use of it. During the first nine years after its adoption there, the records of New York county alone show 5,600 applications for summary judgments. Report of the Commission on the Administration of Justice in New York State (1934), p. 383. See also *Third Annual Report of the Judicial Council of the State of New York* (1937), p. 30.

In England it was first employed only in cases of liquidated claims, but there has been a steady enlargement of the scope of the remedy until it is now used in actions to recover land or chattels and in all other actions at law, for liquidated or unliquidated claims, except for a few designated torts and breach of promise of marriage. *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 3, r. 6; Orders 14, 14A, and 15; see also O. 32, r. 6, authorizing an application for judgment at any time upon admissions. In Michigan (3 Comp.Laws (1929) § 14260) and Illinois (Smith-Hurd Ill.Stats. c. 110, §§ 181, 259.15, 259.16), it is not limited to liquidated demands. New York (N.Y.R.C.P. (1937) Rule 113; see also Rule 107) has brought so many classes of actions under the operation of the rule that the Commission on Administration of Justice in New York State (1934) recommend that all restrictions be removed and that the remedy be available "in any action" (p. 287). For the history and nature of the summary judgment procedure and citations of state statutes, see Clark and Samenow, *The Summary Judgment* (1929), 38 Yale L.J. 423.

**Note to Subdivision (d).** See Rule 16 (Pre-Trial Procedure; Formulating Issues) and the Note thereto.

**Note to Subdivisions (e) and (f).** These are similar to rules in Michigan. Mich.Court Rules Ann. (Searl, 1933) Rule 30.

1946 Amendment

**Note to Subdivision (a).** The amendment allows a claimant to move for a summary judgment at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party. This will normally operate to permit an earlier motion by the claimant than under the original rule, where the phrase "at any time after the pleading in answer thereto has been served" operates to prevent a claimant from moving for summary judgment, even in a case clearly proper for its exercise, until a formal answer has been filed. Thus in *Peoples Bank v. Federal Reserve Bank of San Francisco,* N.D.Cal.1944, 58 F.Supp. 25, the plaintiff's countermotion for a summary judgment was stricken as premature, because the defendant had not filed an answer. Since Rule 12(a) allows at least 20 days for an answer, that time plus the 10 days required in Rule 56(c) means that under original Rule 56(a) a minimum period of 30 days necessarily has to elapse in every case before the claimant can be heard on his right to a summary judgment. An extension of time by the court

Add. 22

2024 WL 1480564
Only the Westlaw citation is currently available.
United States District Court, D. Alaska.

David Paul BIESEMEYER, Plaintiff,

v.

The MUNICIPALITY OF
ANCHORAGE, ALASKA, Defendant.

Case No. 3:23-cv-00185-SLG-KFR
|
Signed March 13, 2024

**Attorneys and Law Firms**

David Pual Biesemeyer, Palmer, AK, Pro Se.

Jason Anthony Thomas, Kate Marie Buerer, Municipality of Anchorage, Department of Law, Civil, Anchorage, AK, for Defendant.

**ORDER RE MOTION TO DISMISS**

KYLE F. REARDON, United States Magistrate Judge

**\*1** Before the Court is a Motion to Dismiss ("Motion") filed by Defendant the Municipality of Anchorage. [1] Plaintiff David Paul Biesemeyer, who represents himself in this matter, filed a Response opposing the Motion, [2] to which Defendant replied. [3] Oral argument on the Motion was not requested and was not necessary for the Court's decision.

Plaintiff's claims have two defects. First, they are time-barred because Plaintiff filed his Complaint several years after the expiration of the two-year limitations period applicable to his claims. Even if Plaintiff were entitled to equitable tolling consistent with the allegations in the Complaint, his claims would still be untimely. Second, the Complaint's allegations fail to plausibly establish a violation of Plaintiff's rights under the Fifth or Fourteenth Amendments. Therefore, the Motion is **GRANTED** and Plaintiff's claims are **DISMISSED with leave to amend.**

**I. BACKGROUND**
Plaintiff is the former owner of a parcel of real property located in Anchorage. [4] Plaintiff lived on and paid taxes on this property for decades. [5] In 2012, however, Plaintiff attempted to protest Defendant's assessment of the property taxes he owed for that year, which totaled $7,607.76. [6] As part of this protest, Plaintiff refused to pay his property taxes; by the end of 2012, he still had not paid them. [7] Consequently, in March 2013, Defendant filed a petition in the Alaska Superior Court for a judgment and decree of foreclosure on Plaintiff's property. [8] In May 2013, the Superior Court granted the petition, and in November 2014, the Superior Court granted Defendant a clerk's deed on Plaintiff's property so that Defendant could sell the property. [9] After obtaining the clerk's deed, Defendant sold the property to a buyer for $243,235.29. [10] Defendant then kept the proceeds of the sale in excess of the property tax debt Plaintiff owed. [11] According to Plaintiff, the property had an assessed market value of over $500,000 at the time of the sale and he owned the property outright. [12]

In August 2023, Plaintiff filed a Complaint against Defendant, asserting three claims. First, Plaintiff claims that Defendant violated the Fifth Amendment's prohibition against taking private property for public use "without just compensation," when Defendant foreclosed on and sold his home to satisfy his property tax debt without compensating him for the surplus equity in the property. [13] Second, Plaintiff claims that Defendant deprived him of due process, in violation of the Fourteenth Amendment, by requiring him to "affirmatively make an effort to claim" the surplus value from the sale and by imposing "unreasonable and unnecessary" requirements to claim those funds. [14] And third, Plaintiff alleges that his loss of the surplus is an excessive fine, in violation of the Eighth Amendment. [15] Plaintiff seeks damages in the amount of: (1) the property's fair market value at the time of the taking less the property tax debt owed, with interest; or, alternatively, (2) the surplus from the property's sale less the property tax debt owed, with interest. [16] Plaintiff also seeks the costs of this litigation. [17]

**\*2** In October 2023, Defendant filed the Motion, arguing that the Complaint fails to state a claim upon which relief can be granted and that dismissal is warranted on two primary grounds. [18] First, Defendant maintains that Plaintiff's claims are untimely, even if a "period of disability" alleged in the Complaint warrants equitable tolling of that period of time. [19] And second, Defendant contends that Plaintiff has failed to

Add. 23

allege any constitutional violation to support any of his three claims. [20] Plaintiff contests each of these arguments. [21]

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) requires dismissal for a complaint's "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " [22] A complaint must provide "well-pleaded facts, not legal conclusions, that 'plausibly give rise to an entitlement to relief.' " [23]

"A statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss." [24] However, "[w]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove" that the statute has not run. [25]

A court must liberally construe the filings of a self-represented plaintiff and afford the plaintiff the benefit of any reasonable doubt. [26] Moreover, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." [27]

## III. DISCUSSION

Even liberally construed, the Complaint fails to state a claim upon which relief can be granted because its allegations indicate that Plaintiff's claims are time-barred. Thus, Plaintiff's claims must be dismissed. Plaintiff's takings and due process claims are deficient for the additional reason that they do not allege facts demonstrating a plausible violation of the relevant constitutional right. However, because amendment of the Complaint is not clearly futile, dismissal is without prejudice.

### A. Alaska's Two-Year Statute of Limitations for Personal Injury Actions Bars Plaintiff's Claims.

As a threshold matter, this is a federal civil rights action brought pursuant to 42 U.S.C. § 1983. That statute provides that

[e]very person who, under color of [State law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. [28]

In other words, § 1983 creates a private right of action against persons acting under color of state law who violate federal constitutional or statutory rights. [29] Under *Monell v. New York City Department of Social Services*, [30] a municipality is a "person" for § 1983 purposes and can therefore be held liable for constitutional injuries attributable to itself. [31] Any constitutional injury by a municipality must occur "pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." [32] To establish municipal liability under *Monell*, a plaintiff must prove that "(1) [they were] deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [their] constitutional right; and (4) the policy was the moving force behind the constitutional violation." [33]

**\*3** Plaintiff brings claims for damages against Defendant for violating his Fifth, Eighth, and Fourteenth Amendment rights. [34] Section 1983 provides the vehicle by which Plaintiff may seek damages against Defendant for these alleged constitutional violations, and thus Plaintiff's claims are properly brought under this statute. [35]

Having clarified the nature of Plaintiff's claims, the Court turns to the parties' dispute over whether these claims are time-barred. Although "statutes of limitations are affirmative defenses, not pleading requirements," [36] a "claim may be dismissed as untimely pursuant to a Rule 12(b)(6) motion when the running of the statute of limitations is apparent on the face of the complaint." [37] Whether a § 1983 claim is timely depends on a combination of state and federal law that determines (1) the length of the applicable limitations

Add. 24

period, (2) the accrual date of the claim, and (3) whether the limitations period was tolled. [38]

With respect to the first issue, Plaintiff asserts that the governing statute of limitations is set forth in either Alaska Statute 09.10.230 or Alaska Statute 09.10.100, both of which provide for a 10-year limitations period. [39] Defendant, meanwhile, contends that the governing statute of limitations is set forth in Alaska Statute 09.10.070(a), which provides for a two-year limitations period. [40] Defendant is correct. "For actions under 🚩 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions." [41] In Alaska, AS 09.10.070(a) requires that a personal injury action be "commenced within two years of the accrual of the cause of action."

The parties do not expressly contest the second issue—the claims' accrual dates—and the Court need not determine those precise dates now. "[T]he accrual date of a 🚩 § 1983 cause of action is a question of federal law." [42] The standard rule is that accrual occurs when the plaintiff has "'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" [43] To determine when a plaintiff has a complete and present cause of action, courts "focus[ ] ... on the specific constitutional right alleged to have been infringed." [44] It appears that Plaintiff's takings and excessive fines claims accrued in November 2014, when the Clerk of Court for the Alaska Superior Court executed a clerk's deed in favor of Defendant in connection with the sale of Plaintiff's property. [45] And it appears that Plaintiff's due process claim [46] accrued in May 2015, six months after that sale, when Plaintiff lost his right under state law to claim the surplus from the sale. [47] Plaintiff did not file his Complaint until August 2023. Thus, unless the two-year limitations period was tolled for over six years, Plaintiff's claims are untimely.

**\*4** With respect to the third issue—tolling—Plaintiff's Complaint alleges he is entitled to equitable tolling of the statute of limitations during a "period of disability which [he] was laboring under from 2014–2016 due to an accident that initially caused his clinical death and where, subsequent to his revival, he was undergoing rehabilitation and treatment from the accident for a period of not less than two years." [48] Defendant insists that these allegations are insufficiently specific for Plaintiff's claims to survive the Motion, and that

even assuming Plaintiff was incapacitated for two full years, his claims would still be untimely. [49] In response, Plaintiff contends that he has properly alleged his incapacity and that "[t]he evidence at trial could show that [he] was incapacitated even longer than alleged in the [C]omplaint, just as it could show a lesser period [of incapacity]." [50]

Just as with the statute of limitations, federal courts generally apply the forum state's law regarding tolling, including equitable tolling, in 🚩 § 1983 actions. [51] At the motion to dismiss stage, "[t]he sole issue is whether the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." [52] Alaska recognizes equitable tolling in situations where "multiple legal remedies are available to the plaintiff and time runs out on one remedy while the plaintiff is pursuing another unavailing remedy." [53] Although parties in Alaska state cases have argued that equitable tolling is warranted where "extraordinary circumstances outside the plaintiff's control make it impossible for the plaintiff to timely assert [their] claim," the Alaska Supreme Court has "neither accepted nor rejected this theory of tolling." [54]

The allegations in Plaintiff's Complaint do not plausibly demonstrate that Plaintiff might be entitled to equitable tolling for the many years needed to render his claims timely. Contrary to Plaintiff's assertions, the face of the Complaint indicates that the two-year statute of limitations expired long before filing, even if the entire alleged tolling period applies. [55] Plaintiff's argument that the evidence might establish that he was incapacitated for more or less than two years does not change this result, particularly because he specifically alleges in his Complaint a two-year period of incapacity. The Court cannot reasonably infer from these allegations that Plaintiff was incapacitated for the much longer period required to prevent his claims from being time-barred. Thus, even if extraordinary circumstances may serve as a basis for equitable tolling under Alaska law, an issue the Court does not reach today, [56] Plaintiff's claims are untimely and must be dismissed. [57]

**B. Plaintiff's Complaint Fails to Allege a Takings Clause or Due Process Violation but Properly Alleges an Excessive Fines Clause Violation.**

Add. 25

**\*5** Although untimeliness is a sufficient basis for dismissal of all of Plaintiff's claims, the Court addresses Defendant's challenges to the merits of these claims should Plaintiff choose to amend the Complaint.

Plaintiff's Complaint contains three claims. First, Plaintiff alleges that Defendant unlawfully took his property in violation of the Fifth Amendment when it foreclosed on and sold his home for $243,235.29 to extinguish his $7,607.76 property tax debt, without compensating him for the difference between that tax debt and the equity he had in the home. [58] Second, Plaintiff alleges that Alaska's six-month limitation on claiming the surplus funds from a tax foreclosure sale of real property—and Defendant's "unreasonable and unnecessary" requirements regarding such claims—violated his Fourteenth Amendment right to due process. [59] And third, Plaintiff alleges that his loss of this surplus equity is an excessive fine in violation of the Eighth Amendment because Alaska's statutory forfeiture scheme as implemented by Defendant is punitive in nature. [60]

Defendant broadly asserts that Plaintiff's allegations fail to state a claim because they do not plausibly show that Defendant deprived Plaintiff of any constitutional right. [61] The Court considers Plaintiff's takings and due process claims together before turning to his excessive fines claim.

### 1. Takings and due process claims

Defendant argues that Plaintiff's takings and due process claims are based on a "misread[ing]" of the Supreme Court's decision in *Tyler v. Hennepin County, Minnesota*. [62] According to Defendant, *Tyler* and another case, *Nelson v. City of New York*, [63] establish that in the context of tax foreclosure sales of real property, a taking violates the Fifth Amendment only if there is no "procedure to claim the surplus" from a sale. [64] Defendant points out that under Alaska law, a local government gains title to the real property it forecloses on, but there is a one-year redemption period during which the former property owner may regain title by paying the applicable taxes, fees, and penalties. [65] Defendant adds that the six-month period for claiming the surplus funds from a tax foreclosure sale further protects former property owners such as Plaintiff. [66] Defendant concludes that here, (1) there was no unconstitutional taking because Plaintiff forfeited his right to the surplus by failing to take

advantage of these state-law-guaranteed procedures, and (2) these procedures were adequate and did not deprive Plaintiff of due process. [67]

**\*6** In response, Plaintiff contends that he has adequately alleged a taking without just compensation and a deprivation of due process because Defendant took his property with "actual knowledge that it owe[d] [him] money" and failed to compensate him accordingly. [68] Plaintiff suggests that the tax forfeiture scheme contains inadequate procedural protections because it put the onus on him to make a surplus claim. [69] Plaintiff further submits that *Nelson* does not control the outcome of his claims, arguing that "the notice and procedure provided in that case were more accessible to the property owner than the procedure" at issue here. [70]

The Fifth Amendment's Takings Clause, applicable to states through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." [71] In *Tyler*, the Supreme Court determined that the petitioner property owner stated a Fifth Amendment takings claim based on the respondent county's retention of the surplus value of the foreclosure sale of the property owner's condo after she failed to pay her property taxes. [72] The Supreme Court explained that although the county "had the power to sell [the property owner's] home to recover the unpaid property taxes[,] ... it could not use the toehold of the tax debt to confiscate more property than was due." [73] To determine whether the property owner had a cognizable property interest in the surplus in excess of her debt, the Supreme Court examined " 'existing rules or understandings' about property rights," including state law, "traditional property law principles," historical practice, and legal precedent. [74] All of these sources supported the conclusion that the property owner had a right to the surplus. [75]

In analyzing its own precedent, the Supreme Court distinguished *Nelson* based on the procedures afforded by the ordinance at issue in that case and the Minnesota statute at issue in *Tyler*. In *Nelson*, the relevant ordinance gave property owners "almost two months after the city filed for foreclosure to pay off the tax debt, and an additional 20 days to ask for the surplus from any tax sale." [76] Because the ordinance did not "absolutely preclud[e] an owner from obtaining the surplus proceeds of a [foreclosure] sale," and because the suing property owners "did not take advantage of this procedure,"

Add. 26

there was no Takings Clause violation. [77] In contrast, the Minnesota statute at issue in *Tyler* "provide[d] no opportunity for the taxpayer to recover the excess value" once absolute title had transferred the state. [78] The statute thereby precluded an owner from obtaining the surplus in excess of their debt. [79]

The *Tyler* Court then compared this statute to other Minnesota statutes involving a property owner's right to the surplus in excess of their debt. The Supreme Court noted that "[i]n collecting all other taxes, Minnesota protects the taxpayer's right to surplus." [80] Since the statute at issue completely extinguished that right where it was elsewhere protected, the Supreme Court concluded that Minnesota had improperly "manipulated" the right in the context of real property taxes. [81]

**\*7** The Court agrees with Defendant that Plaintiff's takings and due process claims fail under *Tyler* and *Nelson*, to the extent that these claims are based on Alaska's statutory treatment of Plaintiff's right to surplus. These cases demonstrate that there is a well-established right to the excess value of real property above the debt owed, but that states may properly enact procedures that restrict a property owner's ability to claim that excess. Although a state must afford property owners the opportunity to claim a surplus, the 20-day limitation on making such a claim in *Nelson* was not an unconstitutional taking or due process violation. [82] Accordingly, it is possible that a regulatory scheme that provides for some minimal amount of process could run afoul of the Takings Clause or due process. But the Alaska law in question here, which grants property owners six months to claim the surplus from a tax-foreclosure sale— plus a year to redeem the property after the foreclosure— meets the low threshold implied by *Tyler* and *Nelson*. [83] Furthermore, even if Alaska grants property owners more time to exercise their right to surplus in some other contexts, this limited inconsistency does not demonstrate an improper manipulation of property rights. [84]

Plaintiff's allegation that Defendant imposed unnecessarily burdensome requirements for claiming a surplus does not save his takings or due process claims. [85] This conclusory allegation is the Complaint's sole reference to these requirements. Without any additional information about the requirements Plaintiff alleges were unreasonable and unnecessary for purposes of claiming a surplus, the Complaint

fails to plead factual content that might allow the Court to reasonably infer that Defendant is liable. [86]

In sum, Plaintiff has not plausibly alleged an unconstitutional taking without just compensation or violation of due process.

### 2. Excessive fines claim

As to Plaintiff's Eighth Amendment excessive fines claim, Defendant declares that "courts have upheld ... foreclosure proceedings" similar to the one in this case and that this claim must thus also fail. [87] Plaintiff responds that Defendant's foreclosure of his property and retention of the surplus from the foreclosure sale unconstitutionally punished him for being a tax protestor. [88] Plaintiff argues that Defendant's retention of "an amount in excess of 3000% of" Plaintiff's property tax debt was "a punitive measure disproportionate to the original delinquency." [89]

**\*8** The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." [90] The Excessive Fines Clause, applicable to states through the Fourteenth Amendment, "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.' " [91] Forfeitures, whether civil or criminal, are payments in kind and are thus "fines" if they constitute punishment for an offense. [92] A civil tax forfeiture that "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." [93] To determine whether a punitive forfeiture is excessive within the meaning of the Eighth Amendment, "[t]he touchstone of the ... inquiry ... is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." [94]

Defendant offers no authority to support its argument that Plaintiff has failed to plausibly allege an excessive fines violation, and the Court is unaware of any precedent compelling that conclusion. *Tyler* and *Nelson* do not control the disposition of Plaintiff's excessive fines claim: the property owners in *Nelson* did not raise an excessive fines claim at all, and the Supreme Court majority in *Tyler* declined to reach the excessive fines issue raised there because the property owner agreed that relief under the Takings Clause

Add. 27

would fully remedy her harm.[95] Plaintiff has alleged facts sufficient to permit a reasonable inference that the tax foreclosure and subsequent sale of his property were not purely remedial and were disproportionate in relation to what he did to trigger these events. Therefore, the Court finds that if Plaintiff successfully cures the statute of limitations issue associated with his Eighth Amendment claim,[96] he will have stated a cognizable claim for violation of the Excessive Fines Clause.

### C. Dismissal of Plaintiff's Claims Is Without Prejudice.

Plaintiff correctly notes that at this early stage in the proceeding, the appropriate disposition of untimely claims is typically dismissal without prejudice.[97] Federal Rule of Civil Procedure 15(a) allows a party to "amend [their] pleading once as a matter of course at any time before a responsive pleading is served." "[A] motion to dismiss is not a 'responsive pleading' within the meaning of [Rule 15(a)]."[98] In addition, the Ninth Circuit permits a plaintiff to amend their complaint once as a matter of right, even after a motion to dismiss has been granted, unless the complaint's defects are uncurable.[99] The "rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant," who tends to be "more prone to make errors in pleading than the person who benefits from the representation of counsel."[100]

**\*9** Defendant has not yet filed an answer and it is at least theoretically possible for Plaintiff to cure the statute of limitations issues discussed above.[101] Similarly, amendment of the additional deficiencies in Plaintiff's takings and due process claims is not clearly futile. Because Plaintiff may be able to allege in good faith facts that cure these various issues, the Court finds that dismissal of Plaintiff's claims with leave to amend is appropriate.

In case Plaintiff wishes to file an Amended Complaint, the Court offers the following guidance. Any Amended Complaint should make no reference to Plaintiff's initial Complaint.[102] Because an amended complaint supersedes any complaint previously filed,[103] an amended complaint must be complete in itself without reference to any prior pleading. Thus, any claims made in an initial complaint that are not realleged in an amended complaint are generally waived.[104] As a result, if Plaintiff files an Amended Complaint, he must reallege any claim he still wishes to

assert. If Plaintiff files an Amended Complaint that remains defective and the Court finds that any further amendment would be futile, the Court may recommend dismissal of Plaintiff's claims with prejudice.[105]

## IV. CONCLUSION

As currently pleaded, all of Plaintiff's claims are barred by the two-year statute of limitations applicable to 🚩 § 1983 actions. Furthermore, even if Plaintiff's takings and due process claims were not time-barred, they would still fail because the Complaint's allegations do not plausibly show that Defendant violated Plaintiff's Fifth or Fourteenth Amendment rights.

**\*10 IT IS THEREFORE ORDERED:**

1. Plaintiff's claims are **DISMISSED with leave to amend** for failure to state a claim upon which relief can be granted.

2. Plaintiff has until **May 13, 2024**, to file one of the following:

   • An Amended Complaint, in which Plaintiff resubmits his claims to the Court after correcting their deficiencies in accordance with this Order. Any Amended Complaint will replace the initial Complaint in its entirety. Therefore, if Plaintiff files an Amended Complaint, the Amended Complaint should make no reference to the initial Complaint. Moreover, Plaintiff must reallege any claim he still wishes to assert. Any claims not included in the Amended Complaint will be considered waived.

   • A Notice of Voluntary Dismissal, which informs the Court that Plaintiff no longer wishes to pursue this lawsuit. Filing a Notice of Voluntary Dismissal would result in dismissal of the entire action.

   If Plaintiff does not file an Amended Complaint or a Notice of Voluntary Dismissal, or if Plaintiff files an Amended Complaint that remains defective and the Court finds that any further amendment would be futile, the Court may recommend dismissal of Plaintiff's claims with prejudice.

### All Citations

Slip Copy, 2024 WL 1480564

Add. 28

---

<strong>Footnotes</strong>

1    Doc. 4.

2    Doc. 6.

3    Doc. 8.

4    Doc. 1 at 4, ¶ 12. For the purposes of this Order, the Court assumes that all factual allegations in Plaintiff's Complaint are true. 🚩 *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007).

5    Doc. 1 at 5, ¶ 13.

6    *Id.* at 5, ¶ 15–16.

7    *Id.* at 5, ¶ 17.

8    *Id.* at 5, ¶ 18.

9    *Id.* at 5–6, ¶¶ 20–22.

10    *Id.* at 6, ¶ 23.

11    *Id.* at 6, ¶ 26.

12    *Id.* at 6, ¶¶ 24–25.

13    *Id.* at 6, 9, ¶¶ 23, 38.

14    *Id.* at 12–14, ¶¶ 53–59.

15    *Id.* at 11–12, ¶¶ 45–52.

16    *Id.* at 14, ¶¶ 1–2.

17    *Id.* at 15, ¶ 3.

18    Doc. 4.

19    *Id.* at 3–6.

20    *Id.* at 6–11.

21    Doc. 6.

22    🚩 *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting 🚩 *Twombly,* 550 U.S. at 570).

23    🚩 *Whitaker v. Tesla Motors, Inc.,* 985 F.3d 1173, 1176 (9th Cir. 2021) (first citing 🚩 *Twombly,* 550 U.S. at 570; and then quoting 🚩 *Iqbal,* 556 U.S. at 679).

24    🚩 *Seven Arts Filmed Entm't Ltd. v. Content Media Corp.,* 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting 🚩 *Conerly v. Westinghouse Elec. Corp.,* 623 F.2d 117, 119 (9th Cir. 1980)).

Add. 29

25    *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

26    *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

27    *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

28    42 U.S.C. § 1983.

29    *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001); *see also Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020) ("Constitutional violations under § 1983 are a species of tort liability.").

30    463 U.S. 690 (1978).

31    *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 126 (1988) (citing *Monell*, 463 U.S. at 690).

32    *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

33    *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (citation omitted).

34    Doc. 1 at 7–15, ¶¶ 32–60, 1–4.

35    *See Wilson v. Washington*, No. C16-5366 BHS, 2017 WL 3616895, at *2 (W.D. Wash. Aug. 23, 2017) (rejecting plaintiff's attempt to "bifurcate his 'as applied' challenge and his § 1983 cause of action" because these claims were "one in the same," explaining that § 1983 is the statutory vehicle that allowed plaintiff to assert his "as applied" challenge to conditions of confinement "in a claim for damages after the fact"); *Deutsche Bank Nat'l Tr. Co. v. F.D.I.C.*, 784 F. Supp. 2d 1142, 1169–70 (C.D. Cal. 2011) ("A party can sue for a violation of a constitutional right only if he has a cause of action." (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971))).

36    *Wyatt v. Terhune*, 315 F.3d 1108, 1117–18 (9th Cir. 2003).

37    *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Induss., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (internal quotation marks and citation omitted).

38    *See Wallace v. Kato*, 549 U.S. 384, 387–88 (2007); *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003).

39    Doc. 1 at 4, ¶ 10.

40    Doc. 4 at 4.

41    *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).

42    *Wallace*, 549 U.S. at 388.

Add. 30

43    *Id.* (quoting 🚩*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

44    🚩*Reed v. Goertz*, 598 U.S. 230, 235–36 (2023).

45    *See* 🚩*Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2172, 2179 (2019) (holding that "[a] property owner may bring a takings claim [in federal court] under 🚩§ 1983 upon the taking of his property without just compensation by a local government," regardless of what sort of procedures are available under state law to remedy the taking); 🚩*Tyler v. Hennepin County, Minn.*, 598 U.S. 631, 639 (2023) (holding that county "could not use the toehold of [a] tax debt to confiscate more property than was due" and that doing so effected a "classic taking in which the government directly appropriates private property for its own use").

46    Plaintiff references both procedural due process and substantive due process in his Complaint and Response. *See* Doc. 1 at 12, ¶ 53; Doc. 6 at 10. However, to state a substantive due process claim, a plaintiff must plausibly allege the violation of a "fundamental right." 🚩*Reno v. Flores*, 507 U.S. 292, 302 (1993). Plaintiff has not made this showing here. The fundamental rights protected by the substantive due process doctrine are specific and limited in number, and property ownership is not one of them. *See* 🚩*Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (listing the fundamental rights covered by the substantive due process doctrine). The Court therefore considers Plaintiff's due process claim to solely implicate procedural due process.

47    *See* 🚩*Reed*, 598 U.S. at 236 (determining that petitioner's 🚩§ 1983 procedural due process claim accrued when no more process existed under state law because such a claim accrues not when the deprivation of a protected interest occurs but only when "the State fails to provide due process"); AS 29.45.480(b).

48    Doc. 1 at 4, ¶ 11.

49    Doc. 4 at 5–6.

50    Doc. 6 at 3–4.

51    🚩*Jones*, 393 F.3d at 927 (clarifying that forum state law regarding statute of limitations and tolling applies "except to the extent any of these laws [are] inconsistent with federal law").

52    🚩*Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993)

53    *Kaiser v. Umialik Ins.*, 108 P.3d 876, 881 (Alaska 2005). Alaska further recognizes a discovery rule, which "control[s] the starting date of the statute of limitations for certain claims" when a plaintiff, "by exercising reasonable diligence, could not have discovered essential information bearing on [their] claim." *Id.* at 882 (internal quotation marks and citations omitted). Although not a basis for equitable tolling under Alaska law, other jurisdictions apply the same principle through equitable tolling. *See id.*

54    🚩*Richardson v. Mun. of Anchorage*, 360 P.3d 79, 85 (Alaska 2015) (quoting *Kaiser*, 108 P.3d at 882).

55    *See* Doc. 6 at 3.

56    Because Alaska has not addressed this issue, the Court would be required to use its best judgment to predict how the Alaska Supreme Court would resolve it "using ... decisions from other jurisdictions, statutes, treatises, and restatements as guidance." 🚩*Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir.

Add. 31

1996) (internal quotation marks omitted); *see also* 🚩 *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 812 (9th Cir. 2002).

57    The Court nevertheless rejects Defendant's suggestion that elevated pleading standards govern Plaintiff's equitable tolling claim. Defendant relies on 🚩 *Richardson v. Municipality of Anchorage*, 360 P.3d 79 (Alaska 2015), to support this notion. Doc. 4 at 5–6. There, the plaintiff moved for tolling under a statute that provides for tolling when a person is "incompetent by reason of mental illness or mental disability." 🚩 *Richardson*, 360 P.3d at 87 (quoting 🚩 AS 09.10.140(a)). The defendants' motions to dismiss were "effectively converted to motions for summary judgment," which required the plaintiff to set forth specific facts showing that he could produce evidence of an "inability to understand his legal rights," as required for tolling under the relevant statute. 🚩 *Richardson*, 360 P.3d at 88. The distinct procedural posture in *Richardson* renders it inapposite for determining the applicable pleading standards in the present action, which are governed by federal law. *Cf. Walker v. Pac. Maritime Ass'n*, No. C07-3100BZ, 2007 WL 4591672, at *2 (N.D. Cal. Dec. 28, 2007) ("[W]hile it is not clear that plaintiff will be able to make a sufficient showing of mental incompetency for the time period in question, construing his pleadings in the light most favorable to him, it ... appear[s] that there might be some plausible basis for application of the equitable tolling doctrine in this pro se case."); 🚩 *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207–08 (9th Cir. 1995) ("Reading the allegations in the complaint with the required liberality, we cannot say that [plaintiff] will be unable to establish that the nine-month limitations period was tolled up to the date that it learned of the [alleged injury].").

58    Doc. 1 at 6, 9, ¶¶ 23, 38.

59    *Id.* at 12–14, ¶¶ 53–59. The Complaint's due process claim section contains the assertion that "the period set out in which to claim the surplus denies equal protection of the law." Doc. 1 at 12, ¶ 53. To the extent Plaintiff attempts to raise an equal protection claim, he has not alleged the elements of such a claim. *See* 🚩 *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (describing elements of equal protection claims brought by a "class of one"); 🚩 *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061–62 (9th Cir. 2006) (describing elements of equal protection claims based on regulatory classification).

60    Doc. 1 at 11–12, ¶¶ 45–52.

61    Doc. 4 at 6.

62    *Id.* at 7; 598 U.S. 631 (2023).

63    🚩 352 U.S. 103 (1956).

64    Doc. 4 at 8–9.

65    *Id.* at 9 (citing AS 29.45.400; AS 29.45.450).

66    *Id.* at 10.

67    *Id.* at 11; *see also* Doc. 8 at 5.

68    Doc. 6 at 9.

69    *Id.*

70    *Id.* at 10.

71    U.S. Const. amend. V.

72    🚩 *Tyler*, 598 U.S. at 647.

73    *Id.* at 639.

74    *Id.* at 638 (quoting 🚩 *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998)).

75    *Id.* at 637–45.

76    *Id.* at 644 (citing 🚩 *Nelson*, 352 U.S. at 104–05, 104 n.1).

77    *Id.* (quoting 🚩 *Nelson*, 352 U.S. at 110).

78    *Id.*

79    *Id.*

80    *Id.* at 645. The Supreme Court explained that Minnesota protects this right when nongovernmental entities such as private creditors are the sellers, and when the property subject to the state tax is income or personal property. *Id.*

81    *Id.* (internal quotation marks omitted) (quoting 🚩 *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 155 (2021)).

82    🚩 *Nelson*, 352 U.S. at 108–10.

83    *See* AS 29.45.450; AS 29.45.480.

84    *Tyler* suggests that a lack of consistency within a state's statutory regime may be evidence of impermissible manipulation of property interests to avoid takings liability. *See* 🚩 *Tyler*, 598 U.S. at 645. But *Tyler* does not mandate that a state treat the right to surplus identically in all contexts. Rather, the Supreme Court's analysis suggests that the inconsistency in Minnesota's statutory regime was problematic because it fully extinguished the right to surplus in the real property tax context while protecting that right in other contexts. *Id.* Here, in contrast, any discrepancies are far less stark: Alaska recognizes the right to surplus following a municipality's sale of tax-foreclosed real property and provides procedures to vindicate that right, just as it does in some other contexts. *See, e.g.*, AS 43.05.275(a) (providing that a taxpayer may file a claim for credit or refund of income taxes "before the later of (1) three years from the time the return was filed; or (B) two years from the time the tax was paid; or (2) within two years from the time the tax was paid, if no return was filed").

85    *See* Doc. 1 at 13, ¶ 55.

86    *See Iqbal*, 556 U.S. at 578. The Complaint's lack of detail concerning Defendant's requirements to claim a surplus relates to Defendant's argument that it cannot be liable under 🚩 § 1983 for merely "following [a] mandatory state statute[ ]" rather than a distinct municipal policy. *See* Doc. 8 at 3–5. Defendant maintains that it lacked discretion to automatically tender payment to Plaintiff following the sale of his home because Alaska law "dictate[s] the required procedure for disposition of ... tax proceeds" from a tax foreclosure sale. Doc. 8 at 4. Because Defendant raises this argument for the first time in its reply brief, Plaintiff has not had occasion to

Add. 33

address it. The Court therefore declines to consider this issue at this time. *See* *Vazquez v. Rackauckas,* 734 F.3d 1025, 1054 (9th Cir. 2013) ("[W]e do not consider issues raised for the first time in reply briefs.").

87    Doc. 4 at 10–11.

88    Doc. 6 at 11.

89    *Id.*

90    U.S. Const. amend. VIII.

91    *United States v. Bajakajian,* 524 U.S. 321, 328 (1998) (quoting *Austin v. United States,* 509 U.S. 602, 609–610 (1993)); *Timbs v. Indiana,* 139 S. Ct. 682, 691 (2019).

92    *Bajakajian,* 524 U.S. at 328; *Austin,* 509 U.S. at 607–09.

93    *Austin,* 509 U.S. at 621 (quoting *United States v. Halper,* 490 U.S. 435, 448 (1989), *abrogated on other grounds by* *Hudson v. United States,* 522 U.S. 93 (1997)); *see also* *Tyler,* 598 U.S. at 648 (Gorsuch, J., concurring) (rejecting notion that a tax-forfeiture scheme does not violate the Excessive Fines Clause if "the scheme has a remedial purpose, even a predominantly remedial purpose," because appropriate question is whether the scheme serves in part to punish).

94    *Bajakajian,* 524 U.S. at 334 (citing *Austin,* 509 U.S. at 622–23).

95    *Tyler,* 598 U.S. at 647–48.

96    *See infra* part III.A.

97    *See* Doc. 6 at 4.

98    *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995)

99    *Chaset v. Fleer/Skybox Int'l, LP,* 300 F.3d 1083, 1088 (9th Cir. 2002) (finding leave to amend futile where "plaintiffs c[ould] [not] cure the basic flaw in their pleading"); *Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1039 (9th Cir. 2002) (noting that where flaws cannot be cured, there is "no need to prolong the litigation by permitting further amendment"); *Crowley v. Bannister,* 734 F.3d 967, 797 (9th Cir. 2013) ("[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.") (internal quotation marks and citation omitted).

100   *Crowley,* 734 F.3d at 797–78 (internal quotation marks and citation omitted).

101   For Plaintiff to plausibly show that he might be entitled to equitable tolling, he must allege facts that, at minimum, permit a reasonable inference that his circumstances made it impossible for him to timely bringing his claims for the entire period alleged. *See* *Kaiser,* 108 P.3d at 882; *Giocondo v. Fairbanks Daily News-Miner,* No. S-16269, 2017 WL 3122388, at *3 (Alaska July 19, 2017) ("A litigant ... is not entitled to equitable tolling simply because he did not have 'ample opportunity and time' to file a complaint. Rather, he must show that extraordinary circumstances made it impossible for him to sue within the statutory period. Thus, even if we were to recognize equitable tolling for extraordinary circumstances, [plaintiff's] circumstances would not qualify." (footnote omitted)).

Add. 34

102   *See* L. Civ. R. 15.1(a) (providing that an "amended pleading must not incorporate by reference any prior pleading, including exhibits").

103   *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) ("It is well-established that an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.' " (citations omitted)).

104   *See Lacey v. Maricopa County*, 693 F.3d 896, 925–28 (9th Cir. 2012) (holding that claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not repled).

105   *See AmeriSourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (explaining that a district court need not grant leave to amend where amendment would be futile); *Woods v. First Am. Title, Inc.*, No. CV111284GHKVBKX, 2011 WL 13218022, at *2 (C.D. Cal. Sept. 20, 2011) ("Futility of amendment is analyzed much like a Rule 12(b)(6) motion to dismiss—an amended complaint is futile when it would be subject to dismissal.").

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add. 35

2024 WL 5238644
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Gloria CAVALUZZI et al, Plaintiffs,

v.

COUNTY OF SULLIVAN, Defendant.

23 Civ. 11067 (PAE)
|
Signed December 27, 2024

**Attorneys and Law Firms**

David M. Giglio, David M. Giglio & Associates, LLC, Utica, NY, for Plaintiffs.

H. Todd Todd Bullard, Neal Louis Slifkin, Steven Paul Nonkes, Harris Beach PLLC, Pittsford, NY, Thomas John Cawley, Sullivan County Attorney, Monticello, NY, for Defendant.

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

**\*1** In ⚑ _Tyler v. Hennepin County_, 598 U.S. 631 (2023), the Supreme Court held that a county could be liable for taking private property without just compensation, in violation of the Takings Clause of the Fifth Amendment of the Constitution, where, after foreclosing on and selling a taxpayer's real property in order to extinguish her property tax debt, it kept for itself the excess proceeds of the sale. The instant case, based on and brought shortly after the _Tyler_ decision, involves similar claims by 25 residents of New York's Sullivan County (the "County"). They claim that the County violated the Takings Clause, by retaining the proceeds of tax foreclosure sales in excess of the sum necessary to pay the outstanding property taxes, interest, and penalties. Based on the same conduct, plaintiffs also claim violations of the Excessive Fines Clause of the Eighth Amendment and, separately, of New York State law.

The County now moves to dismiss plaintiffs' Amended Complaint ("AC") for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to dismiss it, in part, for failure to state a claim

under Rule 12(b)(6). For the reasons that follow, the Court denies the motions.

**I. Background** [1]

**A. Factual Background**

**1. New York's Statutory Scheme Prior to _Tyler_**

New York counties assess taxes on property every year, in accordance with the New York State Real Property Tax Law. _See_ N.Y. Real Prop. Tax Law §§ 900 _et seq._ The taxpayer has one year to pay before the taxes become delinquent. _Id._ §§ 902, 1102(4). A municipality may enforce the payment of a delinquent tax by placing a tax lien on the affected property. _Id._ §§ 1102(3), 1104. If the taxpayer does not pay within the first month after the lien date, the tax accrues interest and penalties. _Id._ § 924. Generally, the delinquent taxpayer has two years to redeem the property and regain title by paying all outstanding taxes, fees, and penalties. _Id._ § 1110. If, however, the taxpayer does not satisfy the amount due, absolute title vests in the State, and the tax debt is extinguished. _Id._ § 1136(3). The State may keep the property for public use or sell it to a private party. _Id._ § 1190.

As of the _Tyler_ decision in 2023, Article 11 of New York State's Real Property Tax Law authorized the taxing authorities to retain the surplus proceeds from the sales of tax delinquent properties. _See id._ §§ 1190, 1194.

**2. The _Tyler_ Decision**

The Supreme Court's unanimous decision in _Tyler_ issued on May 25, 2023. Plaintiff Geraldine Tyler owned a condominium in Hennepin County, Minnesota, on which $15,000 in unpaid property taxes, interest, and penalties had accumulated. ⚑ _Tyler_, 598 U.S. at 635. The County, acting under Minnesota's forfeiture procedures, seized Hennepin's condominium and sold it for $40,000, extinguishing her outstanding debt. _Id._ Rather than return the remaining $25,000, the County kept the surplus for its own use. _Id._ Tyler filed a putative class action against the County and its officials. _Id._ She claimed that, in retaining the surplus, the County had violated the Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth

Add. 36

Amendment, and the Excessive Fines Clause of the Eighth Amendment. *Id.* at 635–36.

**\*2** Ruling on Tyler's takings claim, the Supreme Court unanimously held that a county cannot retain surplus money from the sale of foreclosed property to satisfy a delinquent property tax debt, without providing the taxpayer an opportunity for recovery of the surplus. *Id.* at 639–40. Doing so, the Court held, effected a "classic taking in which the government directly appropriates private property for its own use" without just compensation. *Id.* at 639 (citation omitted). The Court recognized that Hennepin County had "had the power to sell Tyler's home to recover the unpaid property taxes." *Id.* at 639. But, it held, the County "could not use the toehold of the tax debt to confiscate more property than was due." *Id.* at 639. The Takings Clause, it explained, "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Id.* at 647 (citation omitted). And a taxpayer "must render unto Caesar what is Caesar's, but no more." *Id.* at 647. The Court emphasized, however, that where state law "simply defin[es] the process through which the owner could claim the surplus," such would not offend the Takings Clause, because the State had made available a means to secure just compensation. *Id.* at 644 (citing *Nelson v. City of New York*, 352 U.S. 103, 109–11 (1956)). Minnesota law, however, lacked any such mechanism for recovery. *Id.* at 644–45.

The Court's majority did not reach Tyler's Excessive Fines claim. *Id.* at 647–48. In a concurring opinion, however, Justice Gorsuch, joined by Justice Jackson, suggested that Tyler might separately have a viable such claim, to the extent that Minnesota's tax foreclosure scheme produced fines that were partly punitive in nature. *Id.* at 648–50 (Gorsuch, J., concurring).

### 3. *Tyler*'s Aftermath in General

As the Supreme Court recognized in *Tyler*, numerous States at the time, like Minnesota, did not provide "opportunit[ies] for the taxpayer to recover the excess value" from the State following delinquent property sales. *Id.* at 644. After *Tyler*, courts invalidated aspects of the tax foreclosure schemes

of several States for failing to provide mechanisms by which the taxpayer could pursue just compensation. *See, e.g.*, *257-261 20th Ave. Realty, LLC v. Roberto*, 477 N.J. Super. 339, 362 (App. Div. 2023) (holding that because New Jersey's Tax Sale Law, N.J.S.A. 54:5-1 *et seq.*, "d[id] not contemplate compensation to a property owner where the property value exceed[ed] the amount owed to a taxing authority," it "permitted foreclosure of a property owner's equity" and "thus [effected] a prohibited taking after *Tyler*"); *Sharritt v. Henry*, 23 Civ. 15838, 2024 WL 4524501, at *13 (N.D. Ill. Oct. 18, 2024) (holding that the mechanism in the Illinois Tax Code for post-deprivation relief, 35 Ill. Comp. Stat. 200 *et seq.*, was "deficient as a mechanism to satisfy the Fifth Amendment," because it did not provide for "certain and full compensation"). Other States have since modified their statutory schemes. Massachusetts and Michigan, for example, enacted statutory procedures for property owners to reclaim excess proceeds after tax foreclosure sales. *See* Mass. Gen. Laws, ch. 60; Mich. Comp. Laws Ann. § 211.78*l*.[2] In other States, the existing framework has been upheld as consistent with *Tyler*. *See, e.g.*, *FIG v. Lynch*, 2024 Ohio 3196, 2024 WL 3893649, at *6, *appeal denied*, 176 Ohio St. 3d 1409 (2024) (upholding Ohio framework under which "the homeowner retains the right to any surplus beyond the obligations owed" and which thus "aligns with the procedural fairness principle endorsed in *Tyler*" (citation omitted)); *Biesemeyer v. Mun. of Anchorage, Alaska*, No. 23 Civ. 185, 2024 WL 1480564, at *7 (D. Alaska Mar. 13, 2024) (upholding Alaska law, which "grants property owners six months to claim the surplus from a tax-foreclosure sale," as compliant with *Tyler*).

### 4. New York's Post-*Tyler* Amendment of Article 11

**\*3** On April 23, 2024, New York Governor Kathy Hochul signed into law an amendment to Article 11 of the New York State Real Property Tax Law. 2024 N.Y. Sess. Laws ch. 55, pt. BB. It puts in place a process by which an owner can claim and pursue a surplus from a sale of a tax-foreclosed property. *Id.* Specifically, it provides:

> Any person who had any right, title, interest, claim, lien or equity of redemption in or upon a parcel immediately prior to the issuance of the judgment of foreclosure may

Add. 37

file a claim with the court having jurisdiction for a share of any surplus resulting from the sale of such property. Such claims shall be administered and adjudicated, and such surplus shall be distributed, in the same manner as in an action to foreclose a mortgage pursuant to [A]rticle [13] of the real property actions and proceedings law, subject to the provisions of this section.

*Id.* § 15 (adding N.Y. Real Prop. Tax Law § 1197). [3] However, when the foreclosure concerns residential property, "if at the time of the confirmation of the report of sale, no former homeowner has filed a claim for surplus, and there are surplus proceeds that remain to be distributed, the proceeding shall remain open for at least three years[.]" *Id.* After this period, any unclaimed surplus funds "shall be deemed abandoned" and "shall be paid to the tax district ... to reduce its tax levy." *Id.*

Salient here, by its terms, the amendment has limited retroactive application. In general, it applies only to sales of tax-foreclosed property "on or after May 25, 2023," the date the Supreme Court decided *Tyler. Id.* § 19; *see also In re Seelbach,* 218 N.Y.S.3d 200, 213 (N.Y. Sup. Ct. 2024) ("[T]he Legislature made Part BB retroactive to *Tyler'*s 2023 decision date (*see* L 2024, ch 55, pt BB, § 19)—potent if not conclusive proof that the Legislature intended Part BB to cure the RPTL Article 11 system's legal uncertainty under *Tyler.*" (citation omitted)). For properties sold before May 25, 2023, a taxpayer may pursue a claim for the surplus on such sale only if he or she had timely initiated a proceeding to compel the "tax district to distribute such surplus" pursuant to Article 78 of the New York Civil Practice Law and Rules, and if that proceeding remained active as of April 20, 2024. 2024 N.Y. Sess. Laws ch. 55, pt. BB § 19. Article 78 provides a mechanism to challenge as unlawful a decision by a New York State official or administrative agency. *See* N.Y. C.P.L.R. 7803(1).

### B. This Litigation
Plaintiffs are a group of 25 owners of properties in Sullivan County who failed to pay local property taxes and penalties. AC ¶¶ 21–57. Their tax debts ranged from $250, *id.* ¶ 28, to $100,000, *id.* ¶ 32, with an average deficiency of

approximately $12,600. The County foreclosed on their properties, and sold these at tax auctions between July 16, 2019, and February 2, 2023, *i.e.*, before May 25, 2023. *Id.* ¶¶ 21–57. [4] These sales generally occurred between five and 10 months after the County Treasurer had issued a treasurer's deed as to the property. [5] *See, e.g., id.* ¶¶ 23, 29, 177–78. In each case, the properties sold for an amount exceeding the plaintiff's tax debt, with the resulting surpluses ranging from $5,750, *id.* ¶¶ 27–28, to $250,000, *id.* ¶ 31–32, and an average surplus of $51,000. The County retained, and to date has not returned, the excess funds. *See id.* ¶ 51.

**\*4** On December 5, 2023, plaintiffs sued the County and Nancy Buck, in her official capacity as its treasurer, in the United States District Court for the Northern District of New York. Dkt. 1. Plaintiffs brought claims under 42 U.S.C. § 1983, contending that the County's retention of the surplus from the tax foreclosure sales violated the Takings and Excessive Fine Clauses. *Id.* They also brought state law claims of unjust enrichment and breach of fiduciary duty. *Id.*

On December 8, 2023, the Hon. Frederick J. Scullin, finding that the parties reside, and all relevant events occurred, in this District, issued an order directing to transfer the case to this District. Dkt. 2. On December 21, 2023, the case was transferred to this Court. Dkt. 3.

On March 8, 2024, defendants filed a motion to dismiss, a declaration, and a supporting memorandum of law. Dkts. 18–20. On March 11, 2024, the Court issued an order directing plaintiffs either to amend their complaint or oppose the motion to dismiss. Dkt. 21. On March 28, 2024, plaintiffs filed the AC, removing Buck as a defendant. Dkt. 22; *see* Dkt. 24. On April 18, 2024, the County filed a motion to dismiss the AC, Dkt. 25, a supporting memorandum of law, Dkt. 27, and a declaration, Dkt. 26. On May 22, 2024, plaintiffs filed an opposition, Dkt. 32, a declaration, Dkt. 32-1, and annexed exhibits. On May 29, 2024, the County replied. Dkt. 33. On June 14, 2024, plaintiffs filed a sur-reply. Dkt. 36.

### II. The County's Motion to Dismiss for Lack of Subject Matter Jurisdiction
The Court first considers the County's arguments under Rule 12(b)(1): principally, that (1) plaintiffs' claims were not ripe for adjudication at the time the AC was filed; and (2) New York's amendment of Article 11 to create a statutory remedy for taxpayers to reclaim surplus funds has mooted their claims. Neither argument is persuasive.

Add. 38

**A. Applicable Legal Standards**

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."

🚩*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court lacks constitutional authority to adjudicate a claim that is unripe because "[r]ipeness is a jurisdictional inquiry." ⚠️*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). Similarly, a court lacks jurisdiction to hear claims that ensuing events have rendered moot. *See* 🚩*North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam) ("Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions[.]" (citation omitted)).

"The burden of proving jurisdiction is on the party asserting it." 🚩*Daly v. Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) (quoting 🚩*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). Plaintiffs may rely "solely on the pleadings and supporting affidavits," and, although a court "will not draw 'argumentative inferences' in the plaintiff's favor," it is to "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations." 🚩*Robinson*, 21 F.3d at 507 (citation omitted).

**B. Discussion**

Measured against these standards, the Court may exercise jurisdiction over plaintiffs' claims, which are clearly both ripe and not moot.

**1. Takings Clause Claims**

"[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." 🚩*Knick v. Twp. of Scott*, 588 U.S. 180, 189 (2019). When a plaintiff claims such a violation, "a federal court should not consider the claim before the government has reached a 'final' decision" with respect to the action claimed to be a taking. 🚩*Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474, 475 (2021). To make the "relatively modest" showing necessary to show finality, the plaintiff need only demonstrate that "there [is] no question ... about how the

'regulations at issue apply to the particular land in question.' " 🚩*Id.* at 478 (quoting ⚠️*Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997)).

**\*5** The County's first argument is that the Court lacked subject matter jurisdiction over plaintiffs' claims because, at the time the AC was filed, the New York Legislature had not yet amended New York's property laws to bring them into conformity with *Tyler*. This notion—that the legislature's inaction to that point made plaintiffs' claims unripe—is extravagantly wrong. As *Tyler* held, "a taxpayer is entitled to the surplus in excess of the debt owed," and a county's retention of that surplus violates the Takings Clause where the State's legislative scheme "provides no opportunity for the taxpayer to recover the excess value." 🚩598 U.S. at 642, 644. The Supreme Court explained that, although a State could sell a taxpayer's home to recover unpaid property taxes, "it could not use the toehold of the tax debt to confiscate more property than was due." 🚩*Id.* at 639. "[D]oing so," it held, "effected a 'classic taking in which the government directly appropriate[d] private property for its own use.' " 🚩*Id.* at 639 (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002)). The Court held that a plaintiff alleging a county's appropriation of the surplus, without a remedy to recover it, pled "a classic pocketbook injury" that satisfied Article III standing. 🚩*Id.* at 636. [6]

Plaintiffs' claims against the County, at the time brought, were on all fours with those in *Tyler*. Much as Tyler lacked a mechanism under Minnesota law to recover the surplus from Hennepin County, plaintiffs here, before the amendment to Article 11, lacked a mechanism under New York law to recover the surplus above the tax debt. The absence of that mechanism made the retention by a county of the surplus from a tax foreclosure sale a taking under *Tyler*—a point the County does not dispute. And the AC alleges that, when plaintiffs demanded the return of surplus, the County refused. *See, e.g.*, AC ¶ 51 ("On September 28, 2023, [135 Bowery] by and through their attorney demanded that the County of Sullivan return the surplus funds from the tax sale within 30 days from the date of the letter. Said surplus funds were not returned."). Nothing more was required to state a takings claim. As in *Tyler*, plaintiffs' AC plausibly pleads "that [they] suffered financial harm from the County's action, and that is enough for now." 🚩598 U.S. at 637. No doctrine required a

Add. 39

plaintiff to wait, let alone indefinitely, before filing her claim to see whether, and if so when, New York State would bring its statutory scheme into conformity with *Tyler*. *Cf.* 598 U.S. at 636–37 (holding that Tyler had standing to pursue takings claim before Minnesota later amended its property forfeiture laws); *cf.* *Yakus v. United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.").

To be sure, for a takings claim of this nature to be ripe, a plaintiff must allege a sale of his or her property, as opposed to a potential or contemplated sale. *See, e.g.*, *Ramsey v. City of Newburgh*, No. 23 Civ. 8599, 2024 WL 4444374, at *3 (S.D.N.Y. Oct. 8, 2024) ("As the City has not sold the property, Plaintiff's takings claim is not ripe." (collecting cases)); *cf.* *Miner v. Clinton Cnty.*, *N.Y.*, 541 F.3d 464, 475 n.7 (2d Cir. 2008) (where takings claim challenged sale of a property but there was "no indication that a sale has occurred or is imminent," plaintiffs "likely" lacked standing). But the AC pleads, with specificity as to each of the 25 plaintiffs, that the County in fact sold their property and retained the excess value above their tax debts. *See* AC ¶¶ 21–57. Plaintiffs' claims were therefore ripe for adjudication at the time plaintiffs filed the AC.

**\*6** The County's second argument is that the amendment of Article 11 moots the takings claims here by creating a mechanism that a taxpayer may use to pursue recovery of the tax-foreclosure surplus. That, too, is wrong as to these plaintiffs, because the mechanism created by Article 11, as pled, is unavailable to them. As amended, Article 11 does not permit taxpayers to pursue surplus claims where the tax-foreclosed properties were sold before May 25, 2023, unless the taxpayer had timely initiated an Article 78 lawsuit seeking just compensation that was still pending as of April 20, 2024. 2024 N.Y. Sess. Laws ch. 55, pt. BB § 19. The AC pleads that property of each remaining plaintiff was sold before May 25, 2023. *See* AC ¶¶ 21-57.[7] And no party —neither plaintiffs nor the County—has claimed that any plaintiff ever pursued a lawsuit under Article 78, let alone that such a suit was pending as of when the amendment to Article 11 took effect. And the County acknowledges that plaintiffs are ineligible for relief under amended Article 11. Def. Reply at 2. Because the amendment has not put in place a mechanism for surplus recovery that is available to plaintiffs, the County's claim that this amendment moots their claims

does not logically follow. *See, e.g.*, *Moore v. Harper*, 600 U.S. 1, 18–19 (2023) (case was not moot because dismissal "would foreclose the one path to full relief available to the [ ] defendants"); *Ne. Fla. Chap. of the Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 661–62 (1993) (controversy was not moot because changes to law were alleged to inflict the same injuries, albeit to a lesser extent); *Polizzi v. Cnty. of Schoharie*, 720 F. Supp. 3d 141, 151 (N.D.N.Y. 2024) (declining to dismiss takings claims because amended Article 11 did not clearly "provide[ ] plaintiffs a meaningful opportunity to recover the surplus equity in a manner consistent with both *Nelson* and *Tyler*").

The County's brief appears to separately fault plaintiffs for bringing their takings claim in federal court before pursuing —however futilely—relief under amended Article 11 or otherwise bringing a state-court lawsuit for just compensation such as under Article 78. Def. Reply at 2. That argument is foreclosed by *Knick v. Township of Scott, supra*. There, the Supreme Court overruled the requirement of state-court exhaustion announced in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194–95 (1985). That requirement, the Court held, "imposes an unjustifiable burden on takings plaintiffs, [and] conflicts with the rest of our takings jurisprudence[.]" 588 U.S. at 185. Although the presence of a means "to obtain compensation after the fact" could vitiate a takings claim, the Court held, "the property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under § 1983" without first pursuing remedies in state court. *Id.*; *see also* *Pakdel*, 594 U.S. at 475 (remanding in light of *Knick*; Ninth Circuit had wrongly required petitioner to exhaust state procedures before pursuing § 1983 claim in federal court) (per curiam); *Buck Grp., LLC v. Cnty. of Oneida*, No. 24 Civ. 70, 2024 WL 4710707, at *6–7 (N.D.N.Y. Nov. 7, 2024) (denying motion to dismiss as to ripe takings claim; under *Knick*, plaintiff no longer had to first exhaust New York procedures).

In a final argument made under Rule 12(b)(1), the County argues that *Tyler* does not apply retroactively to § 1983 claims based on the retention of surplus from property sales before May 25, 2023, the day *Tyler* issued. Def. Reply at 2– 3. Properly viewed, that is not a jurisdictional challenge, but a challenge properly addressed under Rule 12(b)(6), which

Add. 40

requires that a complaint plausibly plead a right to relief. *See infra* Part III.A. Regardless, the County is wrong. When the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review *and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule.*" *Harper v. Va. Dep't of Tax'n*, 509 U.S 86, 97 (1993) (emphasis added). Consistent with this principle, the Supreme Court has remanded cases to lower courts to apply *Tyler* to cases involving pre-*Tyler* property tax sales. *See Fair v. Cont'l Res.*, 143 S. Ct. 2580 (2023), *vacating Cont'l Res. v. Fair*, 311 Neb. 184 (2022) (remanding case "to the Supreme Court of Nebraska for further consideration in light of *Tyler*"); *see also Sharritt*, 2024 WL 4524501, at *13 n.10 (rejecting similar non-retroactivity argument); *Roberto*, 477 N.J. Super. at 365–66 (same). Courts assessing takings claims brought after *Tyler* and concerning pre-*Tyler* foreclosures, much like the instant case, have also retroactively applied *Tyler*'s holding to permit such cases to move forward, beyond the motion to dismiss stage. *See Polizzi*, 720 F. Supp. 3d at 150–51; *Woodbridge v. City of Greenfield*, 23 Civ. 30093, 2024 WL 2785052, at *7 (D. Mass. May 29, 2024). Although the County rightly argues that § 1983 takings claims based on *Tyler* must be brought within the applicable limitations period—an argument addressed below in connection with its motion to dismiss under Rule 12(b)(6)—it does not cite any authority further limiting such claims to property sales that occurred after *Tyler*.

### 2. Excessive Fines Claims

**\*7** For much the same reasons, the County's argument that plaintiffs' Excessive Fines claims are unripe is easily put aside. "Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine." *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995); *see also United States v. Quinones*, 313 F.3d 49, 58 (2d Cir. 2002). The AC alleges such finality with respect to the exactions that it claims are excessive fines, in alleging that the County foreclosed on their properties, sold them at auctions for sums exceeding the tax debts at issue, and retained the excess value. AC ¶¶ 21–57. It alleges that the fines have all been imposed, and indeed, as to some, that the taxpayer sought and was denied recovery of the surplus. *See id.* ¶ 51. The plaintiffs'

Eighth Amendment claims are thus ripe. *See, e.g.*, *Sharritt*, 2024 WL 4524501, at *14–15 (sustaining Excessive Fines claim upon "wholesale loss of [plaintiffs'] equity pursuant to Illinois' tax sale procedures"); *Polizzi*, 720 F. Supp. 3d at 152 (holding that "plaintiffs have plausibly alleged that the County has 'fined' them by retaining 'disproportionate' financial surpluses without attendant Eighth Amendment justifications (beyond the delinquent tax debts)"); *cf. Ramsey*, 2024 WL 4444374, at *3 ("As with the takings claim, until the surplus value of the property is realized by the City, there is no forfeiture constituting a fine. Plaintiff's excessive fine claim must also be dismissed without prejudice as unripe.").

### 3. State Law Claims

Plaintiffs' state law claims are similarly ripe for adjudication. These are for unjust enrichment (by virtue of the County's having confiscated the property-sale proceeds above the tax debts to which the County was entitled) and for breach of fiduciary duty to plaintiffs (based on plaintiffs' status as owners of property in the County at the time of the foreclosure sales). Whatever the merits of these claims, the AC alleges real and substantial controversies based on specific facts arising from completed events. *See Auerbach v. Bd. of Educ. of the Harborfields Cent. Sch. Dist. of Greenlawn*, 136 F.3d 104, 108–09 (2d Cir. 1998). The issues presented are thus "fit for judicial consideration." *United States v. Balon*, 384 F.3d 38, 46 (2d Cir. 2004) (citation omitted).

Plaintiffs' claims are therefore all ripe for review.

### III. The County's Motion to Dismiss for Failure to State a Claim

The County separately argues, under Rule 12(b)(6), for dismissal of certain plaintiffs' claims as untimely. The Court denies this motion, because the AC does not plead facts sufficient to enable it to reliably determine that the accrual dates as to any of the sales at issue place any plaintiffs outside the limitations period.

#### A. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only

Add. 41

have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving the motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Expiration of the statute of limitations is an affirmative defense to a claim. A Rule 12(b)(6) motion to dismiss is a proper vehicle to challenge a claim on this ground. *Nghiem v. U.S. Dep't of Veterans Affairs*, 451 F. Supp. 2d 599, 602–03 (S.D.N.Y.2006), *aff'd*, 323 F. App'x 16 (2d Cir. 2009) ("A motion to dismiss on statute of limitations grounds generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as opposed to under Rule 12(b)(1).") "Rule 12(b)(6) provides the most appropriate legal basis for a motion to dismiss on such grounds, because expiration of the statute of limitations presents an affirmative defense." *Id.* at 603.

**\*8** However, unlike motions directed to the elements of a claim, as to which the issue is whether the complaint has plausibly pled these elements, a motion directed at this affirmative defense requires the defendant to establish the expiration of a statutory limitations period. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citing Fed. R. Civ. P. 8(c)(1)). Where the defense attempts to establish this on a Rule 12(b)(6) motion, it generally may rely only on the pleadings—the complaint and the materials it incorporates—and may secure dismissal only if the allegations in the complaint are such that "the defense appears on the face of the complaint." *Id.*

## B. Discussion

In § 1983 actions, "the applicable limitations period is found in the 'general or residual [state] statute [of limitations]

for personal injury actions[.]' " *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (alterations in original) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). For claims arising in New York State, that limitations period is three years. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also* N.Y. C.P.L.R. § 214(5). "Federal law determines when a section 1983 cause of action accrues," and such "accrual occurs 'when the plaintiff knows or has reason to know of the injury which is the basis of [the] action.' " *Pearl*, 296 F.3d at 80 (citation omitted).

"A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick*, 588 U.S. at 185. A property owner thus "suffer[s] a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under § 1983 at that time." *Id.*

At the threshold, the parties dispute the point at which the limitations period for plaintiffs' takings claims begins to run. The AC sets out auction dates for each of the foreclosed properties. These range from July 16, 2019, through February 2, 2023. AC ¶¶ 21–57. On this basis, the County argues that the limitations period should begin to run on those dates. Def. Reply at 3–4. At the same time, the County concedes that there were other viable points in the foreclosure and sale process which "[p]laintiffs could have ... utilized as the date of injury," including "the date the Deed into the new owner was filed with the County Clerk," an apparent reference to the date when a new deed, recorded with the County Clerk, transferred ownership of the property to the purchaser at the auction. *Id.* at 4. Plaintiffs counter that the date of injury should be keyed to the date on which a surplus payment was made to the County but was not returned to them. Pls. Br. at 15. On this basis, they argue for use of the "payment date"—the day the property sale proceeds reached the County—because such is the first time that the surplus could be said to have been held by the County. *Id.*; *see* Giglio Decl. ¶ 46 ("The failure to return surplus funds for which each of the causes of actions herein are based is the act which triggers the start of the statute of limitation timelines."). That date, plaintiffs posit, likely fell after the sale date. *See* Pls. Br. at 15; Giglio Decl. ¶ 46. However, plaintiffs state, they do not know, and therefore did not allege in the AC, the dates the County was paid the proceeds from the

Add. 42

sales of their properties. Pls. Br. at 15. Without discovery, they represent, they cannot know this information. *Id.*

The case law as to when takings claims based on retained surpluses accrue has begun only recently to develop, because claims of this nature first proliferated following the decision in *Tyler*. Some cases have treated the accrual date as the date of the property's sale, *see, e.g.*, *Polizzi*, 720 F. Supp. 3d at 147; *cf.Ramsey*, 2024 WL 4444374, at *3 (holding plaintiff's takings claim is not ripe because property has not been sold), while others have treated the accrual date as the date the defendant "took ownership" of the property, *Foshee v. Lane Cnty.*, No. 24 Civ. 447, 2024 WL 3970663, at *2 (D. Or. Aug. 26, 2024), the date a new deed was executed in connection with the property sale, *Biesemeyer*, 2024 WL 1480564, at *3 (citation omitted), or the date the title to the property was "formally transferred," *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 507 F. Supp. 3d 444, 452 (W.D.N.Y. 2020). Also defensible, although as-yet unsupported by a reported decision, is plaintiffs' theory that the takings claim should be keyed to the date when the County came into possession of the surplus without transferring it to the taxpayer. *Cf.Stephen v. Murray*, No. 14 Civ. 4951, 2016 WL 4402020, at *2 (E.D.N.Y. Aug. 17, 2016) ("Although the Court finds no perfectly congruous Second Circuit authority, other circuit courts of appeals considering accrual and ripeness in the takings context have consistently held that a cause of action does not accrue until a party has a right to enforce the claim." (citation omitted)).

 *9 Potentially instructive, too, on this doctrinal point are the mechanics of the distribution scheme for surplus proceeds that the amendment to Article 11 put in place. It defines "surplus" as "the net gain, if any, realized by the tax district upon the sale of tax-foreclosed property, as determined in the manner set forth in [§ 1196] of this title." 2024 N.Y. Sess. Laws ch. 55, pt. BB § 15 (adding N.Y. Real Prop. Tax Law § 1195). Section 1196, in turn, entitled "Determination of existence and amount of surplus," gives the County a period of time after the sale to conclude whether a surplus exists: "Within forty-five days after the sale of tax-foreclosed property, the enforcing officer shall determine whether a surplus is attributable to such sale and if so, the amount thereof," "by ascertaining the sum of the total amount of taxes due plus interest, penalties and other charges." *Id.* (adding N.Y. Real Prop. Tax Law § 1196). Thus, under Article 11 as revised, the existence and amount of a surplus is to be determined within 45 days after the auction, so as to enable

the calculation and deduction of taxes, interest, penalties, and costs. These practical realities might support an argument for an accrual date after the date of the sale *and* after the date the sale proceeds came into the County's possession.

On the present record, the Court cannot grant the County's motion to dismiss based on the affirmative defense of the statute of limitations. The parties have not yet thoughtfully briefed the legal issue as to the accrual date. And, with very limited exceptions, the pleadings do not set out any potentially pertinent data as to individual plaintiffs, save for the date on which each of their property parcels was sold. In these circumstances, unless the Court were prepared to treat that date as necessarily the accrual date, there is no way to reliably determine the accrual date for the AC's takings claims. [8] And because the AC's other claims—the § 1983 claim alleging an excessive fine in violation of the Eighth Amendment, and the state law claims of unjust enrichment and breach of fiduciary duty [9] —turn on the County's retention of the surplus payment from the foreclosure sale, the accrual date for these claims is also indeterminate at this stage. [10]

 *10 The Court therefore denies the County's motion to dismiss for failure to state a claim. The denial of this motion is without prejudice to the County's right, upon a fuller factual record and more thorough briefing, to move anew on the ground that some or all of plaintiffs' claims are time-barred. *See, e.g.*, *Frankel v. Cole*, 313 F. App'x 418, 420 (2d Cir. 2009) (reinstating claims because "it [wa]s not clear from the face of the complaint when plaintiffs ... sustained [or discovered] the alleged injuries for which they seek redress"); *Wang v. Palmisano*, 51 F. Supp. 3d 521, 537 (S.D.N.Y. 2014) (denying motion to dismiss federal claim on timeliness grounds because "it is unclear when the statute of limitations ... began to run").

## CONCLUSION

For the foregoing reasons, the Court denies the County's motions to dismiss. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 25.

Discovery will now commence. By January 6, 2025, the parties are to submit a proposed case management plan, consistent with the Court's individual rules, that provides for the close of fact discovery by the end of April 2025.

Add. 43

SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 5238644

---

## Footnotes

1    The following account is drawn from the AC, Dkt. 24, and the parties' submissions on the County's pending motions. These include the County's memorandum of law, Dkt. 27 ("Def. Br."); and Thomas J. Cawley's declaration, Dkt. 26 ("Cawley Decl."), in support of the County's motion; plaintiffs' opposition and exhibits thereto, Dkt. 32 ("Pls. Br."); David M. Giglio's declaration in support of plaintiffs' opposition, Dkt. 32-1 ("Giglio Decl."); the County's reply, Dkt. 33 ("Def. Reply"); and plaintiffs' sur-reply, Dkt. 36 ("Pls. Sur-reply").

2    Massachusetts's revised scheme has been upheld by at least one district court. *See, e.g.,* *Davenport v. Town of Reading,* No. 22 Civ. 12239, 2024 WL 4495105, at *2 n.5 (D. Mass. Oct. 15, 2024) ("[T]he Massachusetts Legislature answered [*Tyler*'s] call to rewrite the statute. Presumably, if property owners could have obtained relief through Chapter 79, § 10, the Legislature would not have felt the need to enact such extensive legislation."). The scheme that Michigan amended had been held violative of the Takings Clause several years before *Tyler. See* *Rafaeli, LLC v. Oakland Cnty.,* 505 Mich. 429, 474–75 (2020) (unanimously holding that retention of surplus proceeds from tax foreclosures pursuant to the then-controlling version of Michigan's General Property Tax Act was an unconstitutional taking).

3    Under Article 13, "[a]ny person claiming the surplus moneys arising upon the sale of mortgaged premises, ... at any time *before* the confirmation of the report of sale, may file with the clerk in whose office the report of sale is filed, a written notice of such claim, stating the nature and extent of his claim and [his] address." N.Y. Real Prop. Acts. Law § 1361 (emphasis added). Within three months of a motion for confirmation, the court "shall ascertain and report the amount due to him or any other person who has a lien on such surplus moneys, and the priority of the several liens thereon and order distribution of surplus moneys." *Id.*

4    With one exception: the AC originally included claims by plaintiffs Randy and Elizabeth Kleingardner, whose property was sold at a tax-foreclosure auction on or about September 27, 2023, that is, after the effective date of New York's post-*Tyler* amendment to Article 11. *Id.* ¶ 39. On September 17, 2024, the Kleingardners voluntarily dismissed their claims in this action to instead pursue remedies that the amended Article 11 made available. *See* Dkts. 51–52.

5    Also with one exception: The County sold plaintiff Harvey Edelglass's property—for $350,000, yielding a surplus of $250,000 above his $100,000 tax debt—approximately 14 months after the County Treasurer issued a treasurer's deed. AC ¶¶ 31–32, 177.

6    In the context presented here, "the Article III standing and ripeness issues ... 'boil down to the same question,' " whether plaintiff has suffered an actual concrete injury caused by State action and redressable in court. *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 157 n.5 (2014) (quoting *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128 n.8 (2007)); *see also* *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 335 (2006); *Nat'l Org. for Marriage, Inc. v. Walsh,* 714 F.3d 682, 688 (2d Cir. 2013) ("[T]o say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.' " (citation omitted)).

7    Two original plaintiffs, Randy and Elizabeth Kleingardner, brought claims based on a foreclosure sale after May 25, 2023, but they have since dismissed their claims in favor of pursuing recovery of the surplus under Article 11 as amended. *See supra* note 4.

8    By the Court's tabulations, were the auction dates as pled used as the accrual dates, the takings claims of eight of the 25 plaintiffs would appear to be time-barred, as these claims were brought more than three years after the corresponding auction date. *See* AC ¶¶ 23, 25, 43, 47, 49, 54.

9    Regardless of the accrual date, a challenge to these claims based on the statute of limitations appears unlikely to decide the issue, because the property sales, as pled, occurred in 2019 or later and "[t]he statute of limitations in New York for claims of unjust enrichment [and] breach of fiduciary duty ... is generally six years." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001) (citing N.Y. C.P.L.R. §§ 213(1), (7)).

10    The parties separately dispute the date when the limitations period ceased to run. The dispute arises because plaintiffs initially filed this action in an improper forum: the Northern District of New York. *See* Dkts. 1–3. In moving to dismiss, the County argues that the limitations period continued to run until the case was transferred to this Court. Def. Reply at 4. Plaintiffs counter that the original filing date, notwithstanding the improper forum, governs the limitations inquiry. Pls. Br. at 13–14. Plaintiffs are correct. *See U.S. ex rel. Smith v. Yale Univ.*, No. 2 Civ. 1205, 2006 WL 1168446, at *3 (D. Conn. Apr. 28, 2006) (noting that courts have held that "transfer, rather than dismissal, would serve the interest of justice ... [because] the refusal to transfer this case would result in serious prejudice to Plaintiff, for many of Plaintiff's claims, if re-filed in New York, would be barred by the applicable statutes of limitations."); *see also Minnette v. Time Warner*, 997 F.2d 1023, 1026–27 (2d Cir. 1993) (transferring rather than dismissing a case filed in an improper district, on the grounds that 28 U.S.C. § 1406(a) aims "to eliminate impediments to the timely disposition of cases and controversies on their merits," and that transfer to the proper district, unlike dismissal followed by commencement of a new action in that district, would preserve the original filing date for limitations purposes and avoid the prejudice caused by the potential that a new action would be dismissed as untimely).

---

**End of Document**           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Declined to Follow by   Lynch v. Multnomah County,   D.Or.,   December 27, 2024

2024 WL 3970663
Only the Westlaw citation is currently available.
United States District Court, D. Oregon.

Penny FOSHEE, Personal Representative of the Estate
of James E. Peterson, Jr., an Oregon Estate, Plaintiff,
v.
LANE COUNTY, a political subdivision
of the State of Oregon, Defendant.

Case No. 6:24-cv-00447-MC
|
Signed August 26, 2024

**Attorneys and Law Firms**

Phillip M. Williams, Phillip M. Williams, P.C., Eugene, OR, for Plaintiff.

Steven Thiel, Lane County Office of Legal Counsel, Eugene, OR, Emily D. Vario, Lane County Office of County Counsel, Eugene, OR, Thomas M. Christ, Sussman Shank, LLP, Portland, OR, Mallory R. Beebe, Portland Office of the City Attorney, Portland, OR, William S. T. Wood, Schwabe Williamson & Wyatt, Portland, OR, for Defendant.

**ORDER & OPINION**

MCSHANE, District Judge:

**\*1** Plaintiff brings this lawsuit challenging Oregon's statutory procedure related to the sale of foreclosed property. Compl. ¶ 2, ECF No. 1. Plaintiff asserts that Defendant Lane County's retention and distribution of surplus proceeds in excess of Plaintiff's unpaid taxes violates the Takings and Excessive Fines clauses of both the U.S. and state Constitutions. Plaintiff's position relies on the Supreme Court's recent decision in 🚩 Tyler v. Hennepin County, 598 U.S. 631 (2023). See Compl. ¶¶ 3–5.

Defendant now moves to dismiss for failure to state a claim. Def.'s Mot. 1; ECF No. 8. Because Plaintiff's § 1983 and state law claims are time-barred by the applicable statute of limitations, and because Plaintiff lacks standing to seek prospective relief, Defendant's Motion is GRANTED.

**BACKGROUND**

In 2015, Decedent James E. Peterson became the sole beneficiary of a trust which included property located in Dexter, Oregon (the "Peterson Property"). Compl. ¶ 7. On February 4, 2016, the trust was dissolved, and the Peterson Property was distributed and deeded to Peterson. *Id.*

Around September 2017, Defendant Lane County foreclosed on and took ownership of the Peterson Property. *Id.* ¶ 8. Peterson owed Defendant $19,070.62 in back taxes and penalties, but the difference between the Peterson Property's fair market value and Peterson's debts was approximately $2.28 million. *Id.* ¶¶ 8–9.

Following Peterson's death, Plaintiff Penny Foshee became the personal representative of Peterson's estate. *Id.* ¶ 6. On March 11, 2024, Plaintiff filed this action challenging two Oregon statutes that allow Defendant to retain the excess proceeds of the foreclosure sale instead of returning them to the former property owner. *Id.* ¶¶ 10–11. Plaintiff further contends that Defendant offered no process for Peterson (or his estate) to regain any of the surplus equity from the tax foreclosure of the property. *Id.* ¶ 12. Claim 1 of the Complaint seeks a declaratory judgment finding that the Oregon statutes violate the Fifth, Eighth, and Fourteenth Amendments. Claims 2 and 4 are brought under 🚩 42 U.S.C. § 1983 and seek damages for alleged violations of the Fifth and Eighth Amendments. Lastly, Claim 3 seeks damages for alleged violations of the Oregon Constitution's Takings Clause.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the Court to infer the defendant's liability based on the alleged conduct. 🚩 *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Add. 46

The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the Court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### DISCUSSION

**\*2** Defendant offers several grounds for its Motion to Dismiss. However, because issues concerning the applicable statute of limitations and Plaintiff's standing are sufficient to warrant dismissal of this action, the Court need not address the merits of Plaintiff's claims or Defendant's arguments at this time.

### I. Oregon's Two-Year Statute of Limitations for Personal Injury Actions Bars Plaintiff's § 1983 Claims

Plaintiff's second and fourth claims allege violations of the Fifth and Eighth Amendments under 42 U.S.C. § 1983. That statute provides:

> Every person who, under color of any [state law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

Local government entities are considered 'persons' within the context of § 1983 actions and can be sued directly for declaratory or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).

Because 42 U.S.C. § 1983 does not contain its own statute of limitations, Ninth Circuit courts apply the forum state's statute of limitations for personal injury actions. *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F. 3d 1191, 1198 (9th Cir. 2014). In Oregon, personal injury claims must be commenced within two years of the injury. *See* ORS § 12.110(1). Plaintiff's § 1983 claims are thus subject to a two-year statute of limitations. *See David Hill Dev., LLC v. City of Forest Grove*, 688 F. Supp. 2d 1193, 1223 (2010) (explaining that a plaintiff's takings claims brought under § 1983 were subject to a two-year statute of limitations in Oregon).

The parties dispute the point at which the two-year statute of limitations begins to accrue. "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Bonelli v. Grand Canyon Univ.*, 28 F.4th. 948, 952 (9th Cir. 2022) (citations and quotation marks omitted). Under federal law, a civil rights claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (citations and quotation marks omitted). As relevant here, a plaintiff asserting a takings claim may bring a federal suit starting at the time of the taking. *See* *Knick v. Twp. Of Scott, PA*, 588 U.S. 180, 194 (2019).

Plaintiff argues that her federal claims did not accrue until the Supreme Court decided *Tyler* on May 25, 2023. Pl.'s Resp. 14–15, ECF No. 9. But *Tyler* did not magically create a cause of action which would allow Plaintiff to pursue her claims. Rather, the Supreme Court held in *Tyler* that the plaintiff plausibly alleged and had standing to bring a Takings Clause claim under the Fifth Amendment. 598 U.S. at 636. But *Tyler* did not rewrite the rules concerning Plaintiff's duty to timely file her lawsuit.

Add. 47

As the Complaint clearly states, Defendant foreclosed on and took ownership of the Peterson Property in September of 2017. Compl. ¶ 8. Plaintiff's takings claim would accrue on the day that Defendant took ownership of the Peterson Property. Under Oregon's two-year statute of limitations for personal injury actions, Plaintiff would have had two years to bring her 🚩 § 1983 claims from the time of the foreclosure. But Plaintiff instead waited until March 11, 2024—more than four years after the statute of limitations expired—to file her Complaint. By that time, the applicable window for Plaintiff to pursue her 🚩 § 1983 claims had closed.

## II. Oregon's Six-Year Statute of Limitations for Personal Injury Actions Bars Plaintiff's State Law Claim

**\*3** Plaintiff's state law claim is similarly time-barred by Oregon's applicable six-year statute of limitations. [1] The Oregon Supreme Court has repeatedly held that the six-year limitations period established by ORS § 12.080 applies to takings claims brought under state law. *See e.g. Walton v. Neskowin Reg'l Sanitary Auth.*, 550 P.3d 1, 12 (Or. 2024); 🚩 *Suess Builders Co. v. City of Beaverton*, 656 P.2d 306, 314–15 (Or. 1982) (applying a six-year statute of limitations to a claim brought under Art. I, § 18 of the Oregon Constitution); 🚩 *Foster Grp., Inc. v. City of Elgin*, 332 P.3d 354, 364 (Or. App. 2014) (same).

Under Oregon law, the statute of limitations of Plaintiff's takings claim began to run when Defendant took ownership of the Peterson Property in September of 2017. *See* 🚩 *Foster Grp., Inc.*, 332 P.3d at 364. Under Oregon's six-year statute of limitations period pursuant to ORS § 12.080, Plaintiff had until September of 2023 to file her state law claims. But because Plaintiff waited until March 11, 2024 to file her Complaint, her state law claims are untimely.

## III. Plaintiff is Not Entitled to Equitable Tolling

Next, Plaintiff argues that equitable tolling should apply if the Court finds her claims barred by the applicable statute of limitations. Pl.'s Resp. 14. "A court may pause the running of a limitations statute when a party has pursued [her] rights diligently but some extraordinary circumstance prevents [her] from meeting a deadline." 🚩 *Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019) (citations and quotations omitted) (cleaned-up).

To obtain equitable tolling, a plaintiff must establish two elements: (1) that she has been pursuing her rights diligently, and (2) that some extraordinary circumstances stood in her way. *Id.* "The first element requires the effort that a reasonable person might be expected to deliver under [her] personal circumstances[ ] and asks whether the plaintiff was without any fault in pursuing [her] claim." *Id.* (internal citations and quotations omitted). "The second element requires the litigant to show that extraordinary circumstances were the cause of [her] untimeliness and made it impossible to file the document on time." *Id.* (quoting 🚩 *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013)) (cleaned-up).

Plaintiff offers several potential justifications for equitable tolling, but the Court finds none to be persuasive. Plaintiff first asserts that she could not bring her claims because she was not aware of any surplus equity Defendant retained from the Peterson Property. Pl.'s Resp. 17. Alternatively, Plaintiff argues that she did not know about the existence of her possible claims because the Supreme Court had not yet decided *Tyler*. *Id.* Neither argument, however, demonstrates reasonable diligence or extraordinary circumstances.

The Court will not equate Plaintiff's lack of diligence with an absence of constructive notice. It was Plaintiff's responsibility to know the value of the Peterson Property, and she could have timely filed her Complaint at any point in the two years after the alleged taking. Moreover, the legal basis of her claims existed irrespective of the outcome in *Tyler*. In that case, the Supreme Court found that a state's retention of a foreclosure surplus constituted an unconstitutional taking. 🚩 598 U.S. at 638. Contrary to Plaintiff's assertion, the *Tyler* case did not create a new cause of action for Plaintiff to suddenly file her claims. In fact, both the plaintiff's arguments and the Supreme Court's reasoning in *Tyler* can be simplified to a standard analysis under the Fifth Amendment's Takings Clause. *See* 🚩 *id.* at 637–645. Plaintiff could have advanced the same arguments as the plaintiff in *Tyler* had she timely filed her Complaint.

## IV. Plaintiff Lacks Standing to Pursue Her Facial Challenges

**\*4** Finally, Plaintiff challenges 🚩 ORS § 275.275 and ORS § 275.318—Oregon's statutes which authorize and outline Defendant's tax foreclosure procedure. As a general matter, takings claims are bifurcated into "facial" challenges

Add. 48

and "as-applied" challenges. 🚩⚠️ *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993). "A facial challenge involves a claim that the mere enactment of a statute constitutes a taking, while an as-applied challenge involves a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation." *Id.* (citation and quotations omitted). Plaintiff's claim is squarely a facial challenge, as she states that her lawsuit is about ending Defendant's "practice." Pl.'s Resp. 2.

Although Plaintiff explicitly brought her other federal claims under 🚩 § 1983, her facial challenge omits any designation of the statute. *See* Compl. ¶¶ 42–45. It is unclear if Plaintiff's omission was intentional or accidental. Indeed, both parties' pleadings cite exclusively to cases brought under 🚩 § 1983. *See* Def.'s Mot. 12–16; Pl.'s Resp. 14–19. If Plaintiff intended to bring her claim under 🚩 § 1983, then the Court's analysis could stop here. Like her other federal claims, Plaintiff's facial challenge would be time-barred by Oregon's two-year statute of limitations.

The Court may only dismiss a claim on statute of limitations grounds "if, [after] accepting all well-pled facts in the complaint as true, 'it appears beyond doubt that plaintiff can prove no set of facts that would establish the timeliness of the claim.' " 🚩 *United States v. Page*, 106 F.4th 834, 383 (9th Cir. 2024) (quoting 🚩 *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995)). Ambiguity about whether Plaintiff's facial challenge was brought under 🚩 § 1983 creates a sufficient doubt. Within the Complaint, Plaintiff appears to assert her claim pursuant to the Declaratory Judgment Act—a statute which alone does not confer the Court with subject matter jurisdiction.[2] Compl. ¶ 43; 🚩 28 U.S.C. § 2201(a); 🚩 *San Diego Cnty Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1022 (9th Cir. 2023). But neither party has briefed the Court on the grounds underlying Plaintiff's facial challenge to Oregon's statutes, and the Court need not decide that issue today, other than to articulate a doubt about the basis of Plaintiff's claims.

Separately, "[f]ederal courts are required *sua sponte* to examine jurisdiction issues such as standing." 🚩 *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). Article III of the Constitution limits the Court's jurisdiction

to "cases" and "controversies." 🚩 *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). "The doctrine of standing gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Id.* (citation and quotation marks omitted) (cleaned-up).

"[A] plaintiff must establish standing separately for each form of relief sought." 🚩 *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185 (2000). "[A] plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment." 🚩 *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010).

**\*5** The party seeking declaratory relief must demonstrate the three elements that comprise the "irreducible constitutional minimum of standing": (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" that is (2) "causal[ly] connect[ed]" and "fairly traceable" to "the conduct complained of" and "not the result of the independent action of some third party not before the court" and (3) "likely as opposed to merely speculative," such that "the injury will be redressed by a favorable decision." 🚩 *San Diego Cnty.*, 65 F.4th at 1022–23 (quoting 🚩 *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up)). "To have such standing, the plaintiff must have a personal stake in the outcome of each claim and for each form of relief that is sought which exists, not only at the time the complaint is filed, but through all stages of the litigation." 🚩 *Id.* at 1023 (citations and quotations omitted) (cleaned up).

Plaintiff has failed to establish an injury that is "actual or imminent." Plaintiff's injuries appear to be limited to an alleged taking in 2017, with no risk of any future harm. To be sure, the alleged taking is not completely irrelevant to any standing analysis, and such a past injury might support Plaintiff's standing for her Plaintiff's time-barred 🚩 § 1983 claims and any applicable damages. But in the context of prospective relief, past wrongs are "insufficient by themselves to grant standing." 🚩 *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

Add. 49

Similarly, the Court is also unsure how any injury would be redressed by a favorable decision. The only relief that would redress Plaintiff's alleged injury is an award of any proceeds from the sale of the Peterson Property. But even if the Court granted a declaratory judgment in Plaintiff's favor, any order would be limited to a finding that Oregon's statutes are unconstitutional. Plaintiff would instead need to rely on ⚑ § 1983 to redress her injuries, but that avenue has since been closed by Oregon's two-year statute of limitations.

**CONCLUSION**

Defendant's Motion to Dismiss (ECF No. 8) is GRANTED. Claim 1 is DISMISSED without prejudice because Plaintiff lacks standing to pursue her intended declaratory relief. Claims 2, 3, and 4, are DISMISSED with prejudice because they are time-barred by the applicable statute of limitations, and any future amendments would be futile.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 3970663

---

**Footnotes**

1    The Court construes Plaintiff's state law claim as an inverse condemnation claim. *See* Compl. ¶ 69 ("The [t]akings of decedent Peterson's property by Lane County without just compensation injured decedent Peterson[,] and his Estate is entitled to just compensation and other relief.").

2    To the opposite, the Ninth Circuit has clearly explained that "a [p]laintiff has no cause of action directly under the United States Constitution" and "a litigant complaining of a violation of a constitutional right must utilize ⚑ 42 U.S.C. § 1983." ⚑ *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) (dismissing appeal for lack of subject matter jurisdiction where federal takings claim was not brought under ⚑ § 1983).

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4444374
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Marjorie RAMSEY, Plaintiff,

v.

CITY OF NEWBURGH, Orange County, Defendants.

No. 23-CV-8599 (CS)
|
Signed October 8, 2024

**Attorneys and Law Firms**

Tanya Dwyer, Legal Services of the Hudson Valley, Peekskill, New York, Counsel for Plaintiff.

Paul Svensson, Hodges Walsh & Burke, LLP, White Plains, New York, Counsel for Defendant City of Newburgh.

Matthew Nothnagle, Chief Assistant County Attorney, Orange County District Attorney's Office, Goshen, New York, Counsel for Defendant Orange County.

**OPINION & ORDER**

Seibel, United States District Judge

**\*1** Before the Court are the motions to dismiss of Defendants the City of Newburgh and the County of Orange. (ECF Nos. 30, 37.) For the following reasons, the motions are GRANTED.

**I. BACKGROUND**

For purposes of this motion, the Court accepts as true the facts, but not conclusions, set forth in Plaintiff's Amended Complaint, (ECF No. 27 ("AC")).

**A. Facts**

Plaintiff Marjorie Ramsey was the sole owner of a property in the City of Newburgh, New York, where she has resided for 32 years. (See AC ¶¶ 1, 12.) She fell behind on her taxes, (id. ¶ 12), and on September 30, 2022, the City seized the property in a tax foreclosure for an unpaid tax lien of $23,000, and the deed was transferred to the City, (id. ¶¶ 1-2, 12). Plaintiff has not left the premises and the City is in the process of trying to evict her. (See id. ¶¶ 11-14.) She alleges that the property

was worth $264,000 on the day the City seized it and that she cannot afford to relocate without access to the equity in the property. (Id. ¶ 14.) She alleges that the City's retention of the excess value beyond what she owed in taxes violates the Takings and Excessive Fines clauses of the federal and New York Constitutions. (See generally AC.)

**B. Procedural History**

On September 29, 2023, Plaintiff commenced this lawsuit against Janice Gaston, Comptroller of the City of Newburgh, Todd Venning, City Manager for the City of Newburgh, and Steven Neuhaus, County Executive of Orange County. (ECF No. 1.)[1] On November 27, 2023, Gaston and Venning filed a letter requesting a pre-motion conference in anticipation of a motion to dismiss, (ECF No. 12), and on December 1, 2023, Neuhaus did the same, (ECF No. 16). On December 27, 2023, the Court held a pre-motion conference and granted Plaintiff leave to amend the complaint. (See Minute Entry dated Dec. 27, 2023.) On February 16, 2024, Plaintiff filed the AC. (ECF No. 27.) The instant motions followed. (ECF Nos. 30, 37.)

**II. LEGAL STANDARD**

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008), vacated and superseded on other grounds on reh'g en banc, 585 F.3d 559 (2d Cir. 2009).[2] "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Id. "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." Id. "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd on other grounds, 561 U.S. 247 (2010).

**\*2** When a defendant moves to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the

Add. 51

Court must address the issue of subject matter jurisdiction first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

Ripeness is a jurisdictional inquiry, *see, e.g.,* 🚩*Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 110 (2d Cir. 2009), and accordingly the Court "must presume that [it] cannot entertain [Plaintiff's] claims unless the contrary appears affirmatively from the record," ⚠️*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005); *see* 🚩*Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*, No. 11-CV-5608, 2013 WL 135216, at *6 (S.D.N.Y. Jan. 10, 2013) ("[R]ipeness is a jurisdictional inquiry antecedent to a Court's ability to hear claims."). The concept of ripeness is "rooted in Article III's case or controversy requirement and the prudential limitations on the exercise of judicial authority." ⚠️*S & R Dev. Ests., LLC v. Bass*, 588 F. Supp. 2d 452, 460 (S.D.N.Y. 2008). The ripeness doctrine "ensure[s] that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution." ⚠️*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). It also prevents courts from "entangling [themselves] in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution." *Id.* The ripeness requirement defers federal review of claims until they have "arisen in a more concrete and final form." 🚩*Murphy*, 402 F.3d at 347.

## III. DISCUSSION

### A. Takings Clause

"The Takings Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that 'private property' shall not 'be taken for public use, without just compensation.'" *Dorce v. City of N.Y.*, 608 F. Supp. 3d 118, 139 (S.D.N.Y. 2022) (quoting U.S. Const. amend. V), *motion to certify appeal denied*, No. 19-CV-2216, 2022 WL 3133063 (S.D.N.Y. July 18, 2022). "A property owner states a claim for a violation of the Takings Clause when the plaintiff adequately alleges that the government took the plaintiff's property for public use without paying for it." *Id.*

For the first cause of action – taking of private property without a valid public use – Plaintiff alleges that by foreclosing on her property, the City and the County have confiscated more property than was due and have no public use to support keeping her equity in the property, which exceeds the amount she owes in taxes and associated charges. (AC ¶¶ 22, 25.) For the second cause of action – taking of private property without just compensation – Plaintiff alleges that to effectuate just compensation, she is entitled to the surplus equity in her property based on its fair market value at the time of the taking. (*Id.* ¶ 34.)

In *Tyler v. Hennepin Cnty., Minnesota*, the Supreme Court determined that the plaintiff had plausibly alleged a taking where the plaintiff had accumulated $15,000 in debt on her property, including $2,300 in unpaid taxes, and the county seized and sold the property for $40,000 and kept the remaining $25,000 for its own use. *See* 🚩598 U.S. 631, 635, 637 (2023); *see also Polizzi v. Cnty. of Schoharie*, No. 23-CV-1311, 2024 WL 1061503, at *6 (N.D.N.Y. Mar. 12, 2024) (plaintiffs plausibly alleged that county violated takings clause by retaining surplus proceeds from tax foreclosure sale. The City argues that Plaintiff's takings claim is premature because a foreclosure sale has not been completed, and no taking of surplus can occur until after the property is sold and the surplus is retained by the City. (ECF No. 39 ("Newburgh Mem.") at 7-8.) The City also argues, (*id.* at 8), that the foreclosing government is only required to return proceeds from the sale in excess of the debts associated with the property, and therefore Plaintiff is not entitled to receive the difference between the debt and the fair market value of the property at the time of the foreclosure, because the property that is taken is the surplus proceeds, not the real property, *see* 🚩*Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429, 465-66 (2020).[3] The City asserts, and Plaintiff does not dispute, that it has not been able to market the property for sale because Plaintiff has resisted eviction proceedings and has been living in the house rent-free and tax-free since September 2022. (Newburgh Mem. at 5-6; *see* AC ¶¶ 11-14.)

**\*3** In *Tyler*, the Court held that a county cannot retain surplus money after it has sold a foreclosed property and satisfied the tax debt. *See* 🚩598 U.S. at 639-40. Plaintiff concedes that she continues to occupy the property while fighting eviction, (AC ¶¶ 11-14), has alleged only that the property has been seized and the deed transferred to the City, and has not alleged that the City has sold or received any surplus money from the property. But a tax foreclosure

Add. 52

alone does not constitute a taking. *Matter of Seelbach*, No. 2019/80001, 2024 WL 3734044, at *12 (N.Y. Sup. Ct. July 29, 2024) ("By its terms, *Tyler* accords each owner of real property subject to tax foreclosure a Takings Clause right to claim surplus funds, but *Tyler* does not question a taxing authority's power to obtain title to tax-delinquent property by deed in foreclosure."). "[A] tax foreclosure proceeding can effectuate a taking only upon execution of a foreclosure judgment by which the taxing authority ... becomes seized of the property's sale proceeds or value in excess of the unredeemed tax lien plus authorized costs." *Id.* As the City has not sold the property, Plaintiff's takings claim is not ripe. *Tupaz v. Clinton Cnty., New York*, 499 F. Supp. 2d 182, 191-92 (N.D.N.Y. 2007) (plaintiffs' claim that county violated their constitutional rights by depriving them of right to surplus money not ripe because plaintiffs' property had not yet been sold), *aff'd sub nom.* *Miner v. Clinton Cnty., N.Y.*, 541 F.3d 464 (2d Cir. 2008).

The possibility that the City might keep the property for its own use after Plaintiff vacates it does not change this result. In that situation, she would be entitled to the difference between the value of the property and what she owes the City, "just as if the Government had sold the property." *Tyler*, 598 U.S. at 643 (citing *United States v. Lawton*, 110 U.S. 146, 149-50 (1884)). But here, where Plaintiff has only alleged a foreclosure but not that the City has kept the property for its own use (or sold it), there has not yet been a taking. Accordingly, the takings claim is not ripe and must be dismissed without prejudice. *See* *Sirob Imports, Inc. v. Peerless Ins. Co.*, 958 F. Supp. 2d 384, 390 (E.D.N.Y. 2013) ("[I]f the case is not ripe, there is no subject matter jurisdiction and dismissal without prejudice is the proper disposition in the ripeness context."), *aff'd*, 558 F. App'x 32 (2d Cir. 2014) (summary order). [4]

**B. Excessive Fines Clause**

For the fifth cause of action, Plaintiff alleges that the City and County have imposed an excessive fine by "[c]onfiscating the entire value of [her] property because of non-payment of smaller amounts of real estate taxes." (*See* AC ¶¶ 55-58, 65-68.) "To determine whether a financial penalty is excessive under the Eighth Amendment, courts in the Second Circuit use a two-step inquiry." *Dorce*, 608 F. Supp. 3d at 143. "First, a court must consider whether the payment or forfeiture at issue constitutes a fine, meaning that it is punitive in nature and not purely remedial." *Id.* "Second, a court

weighs four factors to determine whether the fine is grossly disproportional to the underlying offense....:

> (1) the essence of the underlying offense of the complainant and its relation to other criminal activity, (2) whether the complainant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the complainant's conduct.

*Id.*

The City again argues that Plaintiff's excessive fines claim is not ripe because the City has not sold the property or retained any surplus equity. (Newburgh Mem. at 9-11.) Plaintiff contends that her claim is ripe because her fine was "~240,000 dollars plus the sum certain that was owed to the Municipal Defendants when the property was condemned." (ECF No. 42 at 6.) But the City has only foreclosed on the property and, at this point, has not received any proceeds. The City's foreclosure and seizure of the property alone does not constitute an excessive fine. *Tyler*, 598 U.S. at 637 ("States have long imposed taxes on property. Such taxes are not themselves a taking, but are a mandated contribution from individuals for the support of the government for which they receive compensation in the protection which government affords. In collecting these taxes, the State may impose interest and late fees. It may also seize and sell property, including land, to recover the amount owed."). As with the takings claim, until the surplus value of the property is realized by the City, there is no forfeiture constituting a fine. Plaintiff's excessive fine claim must also be dismissed without prejudice as unripe. [5]

**C. State Law Claims**

**\*4** The "traditional 'values of judicial economy, convenience, fairness, and comity' " weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343,

Add. 53

350 (1988)). Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law causes of action. *See id.* (citing 28 U.S.C. § 1367(c)(3)). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

**D. Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for " 'repeated failure to cure deficiencies by amendments previously allowed' " or " 'futility of amendment,' " among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended her complaint, after having the benefit of Defendants' premotion letters, (ECF Nos. 12, 16), and the discussion at the December 27, 2023 pre-motion conference, (*see* Minute Entry dated Dec. 27, 2023). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *see also Baines v. Nature's Bounty (NY), Inc.*, No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (no abuse of discretion where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this decision. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [she] fails to specify ... how amendment would cure the pleading deficiencies in [the] complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiff] could—or would—provide additional allegations that might lead to a different result ...."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendant's] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again). Indeed, the issues fatal to Plaintiff's Complaint are substantive and cannot be cured by re-pleading. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ('The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it."); *Williams v. Smith*, No. 22-CV-1630, 2024 WL 3292725, at *18 (D. Conn. July 3, 2024) (denying leave to amend where, although unripe claims "theoretically may become justiciable at some point in the future ... this is contingent on a change of circumstances; it is not a problem that may be solved by better pleading").

**\*5** Accordingly, the Court declines to grant leave to amend *sua sponte*.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motions are GRANTED and Plaintiff's claims are dismissed without prejudice.

**SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4444374

Add. 54

## Footnotes

1    Plaintiff attempted to file the original complaint on that date, and again on October 5, 2023, but both filings were rejected by the Clerk of Court for filing deficiencies. (*See* ECF Nos. 1, 3.) She finally successfully filed on October 17, 2023. (*See* ECF No. 6.)

2    Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

3    In its opening and reply briefs, the City purports to cite to and quote 🚩 *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020), for this and related propositions, but the quotations the City includes in its briefs are from 🚩 *Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429 (2020), not from *Freed*. (*See* Newburgh Mem. at 8; ECF No. 40 at 2-3.)

4    Plaintiff could have sold the property herself in advance of the foreclosure, but having chosen not to do so, she now has to wait for the surplus. I do not understand the City to be disputing that she would be entitled to the surplus once one exists. If the City were to unreasonably delay in selling the property or determining to keep it for its own use, it seems to the Court that Plaintiff would have a remedy in an Article 78 proceeding in state court. But there is no indication, and Plaintiff does not allege, that the City has been dilatory. To the contrary, it appears that the eviction proceedings are the holdup.

5    Separate from the merits of the claims, the County argues that the claims against it must also be dismissed because Plaintiff has not alleged any facts showing that the County had any role in the foreclosure that she alleges violated her rights. (ECF No. 32 at 4.) Indeed, the only facts that Plaintiff alleges as to the County are that it assesses annual taxes against property owners and that, upon information and belief, it is an active participant in the taking because the taking benefits the County. (AC ¶¶ 3-5.) That conclusion does not follow as a matter of logic, as benefiting does not equate to active participation. Even if the County has somehow benefited from the City's actions, Plaintiff still has not alleged that the County had anything to do with the alleged taking of her property. In her brief in opposition to the County's motion, Plaintiff argues that the FAC alleges that there is some sort of agreement between the City and the County regarding tax enforcement. (*See* ECF No. 44 at 1; *see id.* at 2.) Her failure to cite to the AC in that regard is telling, because there is no such allegation. In any event, putting aside that a plaintiff cannot amend her complaint via her opposition to a motion to dismiss, *see, e.g.*, *Budhani v. Monster Energy Co.*, No. 20-CV-1409, 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021), Plaintiff provides no facts supporting the conclusion that the City was acting on behalf of the County or pursuant to an agreement with the County when the City foreclosed. She cites to a section of the Orange County Charter that relates to the amount of the County tax levy and has nothing to do with foreclosures, let alone foreclosures by municipalities within the County. (*See* ECF No. 44 at 2 (citing Orange County Charter § 4.08).) Municipalities can be held liable under § 1983 if "action pursuant to official municipal policy of some nature caused a constitutional tort," 🚩 *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690-91 (1978), but here Plaintiff alleges no action by the County. Because Plaintiff has not plausibly alleged any involvement of the County in the challenged conduct, her claims against it would be dismissed even if they were ripe.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                   5

Add. 55

Stephen v. Murray, Not Reported in Fed. Supp. (2016)

2016 WL 4402020

2016 WL 4402020
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, E.D. New York.

William STEPHEN Dean (a/k/a Billy Dean),
Rori Leigh Gordon, Green 2009 Inc., One55day
Inc. and Look Entertainment, Ltd., Plaintiff,
v.
The Town of Hempstead, Kate MURRAY, John E.
Rottkamp, David P. Weiss, Gerald C. Marino, Katuria
E. D'Amato, John F. Ragano, Frank A. Mistero, Joseph
F. Pellegrini and Kimberly A. Perry, Defendants.

14-CV-4951 (MKB)
|
Signed 08/17/2016

**Attorneys and Law Firms**

Erica Tamar Dubno, Herald Price Fahringer, Fahringer &
Dubno, New York, NY, for Plaintiff.

Peter Sullivan, Donna A. Napolitano, Berkman, Henoch,
Peterson, Peddy & Fenchel, P.C., Garden City, NY, for
Defendants.

## MEMORANDUM & ORDER

MARGO K. BRODIE, United States District Judge

**\*1** On August 20, 2014, Plaintiffs Billy Dean and
Rori Leigh Gordon, along with their affiliated entities,
brought this action against Defendants Town of Hempstead
(the "Town"), the Town's Building Inspector, the Town's
Supervisor, and individual members of the Town's Board of
Appeals pursuant to 42 U.S.C. § 1983, alleging numerous
constitutional violations stemming from Defendants' refusal
to grant Plaintiffs the necessary authorizations to open and
operate two cabarets. (Compl., Docket Entry No. 1.) On
September 24, 2015, Defendants moved to dismiss the
case for lack of subject matter jurisdiction. (Def. Mot.
to Dismiss, Docket Entry No. 43.) Judge John Gleeson
granted Defendants' motion in part and denied it in part,
dismissing Plaintiffs' as-applied claims without prejudice and
reserving decision on the remaining claims asserting facial
constitutional challenges.[1] Dean v. Town of Hempstead,

___ F. Supp. 3d. ____, ___, 2016 WL 660884, at *1
(E.D.N.Y. Feb. 18, 2016). On March 17, 2016, Plaintiffs
filed a motion for reconsideration, styled as a "Motion for
Reconsideration or to Set Aside Pursuant to Fed. R.
Civ. P. 60(b)," claiming that recently disclosed evidence
necessitated reconsideration of Judge Gleeson's decision to
dismiss the as-applied claims. (Pls. Mot. for Reconsideration
("the Reconsideration Motion"), Docket Entry No. 71.) The
Court held a conference on July 20, 2016, at which it denied
the Reconsideration Motion and reserved decision on whether
to hold Plaintiffs' dismissed claims in abeyance until they are
ripe. (Minute Order dated July 20, 2016.) For the reasons set
forth below, the Court declines to hold Plaintiffs' dismissed
claims in abeyance.

### I. Background

At the July 20, 2016 conference, Plaintiffs requested that
the Court hold in abeyance the as-applied claims that the
Court dismissed in the February 18, 2016 decision.[2] (*See*
Minute Order dated July 20, 2016; *see also* Transcript dated
July 20, 2016 ("T.") at 10, 11.) Plaintiffs argued at the
conference that Defendants have demonstrated a pattern of
delay in addressing Plaintiffs' applications and that, by the
time Plaintiffs' as-applied claims under section 1983 are
ripe for review by the Court, Defendants likely will argue
that those claims are time-barred by the statute of limitations
applicable to section 1983 claims. (T. at 11.) The Court
agreed to review the two cases Plaintiffs cited in support of
their argument — Wheaton College v. Sebelius, 703 F.3d
551 (D.C. Cir. 2012), and Giulini v. Blessing, 654 F.2d 189
(2d Cir. 1981) — in deciding whether to hold the dismissed
claims in abeyance. (*Id.* at 13.)

### II. Discussion

This case involves the interaction of two analytically distinct
concepts: first, that a claim must be timely filed, and second,
that a claim must be ripe for adjudication.

**\*2** A cause of action accrues under section 1983 "when
the plaintiff has 'a complete and present cause of action,'
" Wallace v. Keto, 549 U.S. 384, 388 (2007) (quoting
Bay Area Laundry & Dry Cleaning Pension Tr. Fund v.
Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)), that is,
when "the plaintiff can file suit and obtain relief," *id.* (internal

Add. 56

Stephen v. Murray, Not Reported in Fed. Supp. (2016)

2016 WL 4402020

quotation marks omitted) (quoting same). In addition, "[t]o be justiciable, a cause of action must be ripe — it must present a real, substantial controversy, not a mere hypothetical question." *Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 511 (2d Cir. 2014). A claim is not ripe "if it depends upon contingent future events that may or may not occur as anticipated, or indeed may not occur at all." *Id.*

Where constitutional claims involve land use issues, the Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), causes the issues of ripeness and claim accrual to functionally converge.[3] *See Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez*, 659 F.3d 42, 50–51 (1st Cir. 2011) (exploring the relationship between ripeness and accrual in the context of a takings claim). The Court in *Williamson* held that a land use decision is not ripe until it is "final," and clarified that the concept of finality "is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Williamson Cty.*, 473 U.S. at 193; *see also Dean*, 2016 WL 660884, at *13 (noting that the Second Circuit has extended the application of the *Williamson* "final decision" requirement to land use disputes involving substantive due process claims, equal protection and procedural due process claims, and First Amendment claims).

Although the Court finds no perfectly congruous Second Circuit authority, other circuit courts of appeals considering accrual and ripeness in the takings context have "consistently held that a cause of action does not accrue until a party has a right to enforce the claim." *Norco Constr., Inc. v. King Cty.*, 801 F.2d 1143, 1146 (9th Cir. 1986) (holding that the plaintiff "was entitled, indeed required, to await the final decision of the county without commencement of the statute of limitations"); *Hensley v. City of Columbus*, 557 F.3d 693, 696–97 (6th Cir. 2009) (holding that the statute of limitations accrues when the takings claim becomes ripe); *New Port Largo, Inc. v. Monroe Cty.*, 985 F.2d 1488, 1496–97 (11th Cir. 1993) ("When *Williamson*'s two-prong test is met, the injury is complete, and the claim accrues for purposes of the statute of limitations."); *Biddison v. City of Chicago*, 921 F.2d 724, 728 (7th Cir. 1991) (noting that

"[s]ince *Williamson County* was decided ... several regulatory taking cases hold that a taking accrues at the same time that it ripens"); *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990) (holding that the plaintiff's action accrued when the state appellate court issued a decision invalidating the zoning ordinance in question); *McMillan v. Goleta Water Distr.*, 792 F.2d 1453, 1457 (9th Cir. 1986) (holding that district court erred in calculating the limitations period from date water service was interrupted rather than date water district rendered final decision not to restore service); *cf. Asociación de Suscripción Conjunta*, 659 F.3d at 51 ("[G]iven the way the Court has formulated the *Williamson County* ripeness requirements, and the takings law on facial attacks, a facial takings challenge generally both ripens and accrues for statute of limitations purposes at the same moment in time.").

**\*3** As Judge Gleeson's decision explains, ripeness is a threshold question absent which the Court lacks jurisdiction to act on the claims before it, *Dean*, 2016 WL 660884, at *13, including by holding them in abeyance. Contrary to Plaintiffs' claim, *Wheaton College* and *Giulini* do not suggest otherwise.

In *Wheaton College*, religious colleges challenged the Affordable Care Act's contraception requirement after the Department of Health and Human Services issued an interim final rule but before it issued a final rule. 703 F.3d at 552. The question on appeal was whether the exemption from the contraception requirement that was afforded to religious organizations would apply equally to the religious colleges. *Id.* The government promised the D.C. Circuit that religious colleges would be exempt from its contraception requirement under a year-long exemption period and assured the court that it would soon be promulgating a new rule that would apply to religious colleges after that exemption period expired. *Id.* The D.C. Circuit held the government at its word, noting that it had made a "binding commitment" to issue a new rule in the first quarter of 2013, mere months later. *Id.* The court concluded that the consolidated cases before it were "not fit for review at this time" and based its decision "expressly upon the understanding that the government w[ould] not deviate from its considered representations to th[e] court." *Id.* Thus, in *Wheaton College*, the appellants' case would have been ripe but for the government's anticipated new rule, and in clear "reliance on the [government's] binding representations,"

Add. 57

Stephen v. Murray, Not Reported in Fed. Supp. (2016)

2016 WL 4402020

the court held the cases in abeyance on appeal pending the issuance of that new rule. *Id.* at 553.

*Giulini* involved a similarly circumscribed set of facts. *See Giulini*, 654 F.2d at 192–93. The plaintiffs in *Giulini* were homeowners who had challenged a zoning ordinance on constitutional grounds. *Id.* at 190. The plaintiffs had requested declaratory, injunctive and pecuniary relief, and were concurrently embroiled in state court criminal proceedings for violating the same ordinances under review in federal court. *Id.* at 191. The Second Circuit held that, in view of the pending criminal action in which the plaintiffs had asserted constitutional defenses, the district court judge should have retained jurisdiction over the plaintiffs' damages claims, although the judge could reasonably deny the plaintiffs' request for declaratory and injunctive relief. *Id.* at 193. The Court noted that "a federal court is not precluded, in the exercise of its discretion, from staying proceedings in the action before it, pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views." *Id.* It further held that a stay as to the damages claims was appropriate where "the identical constitutional issues have been decided against [the plaintiffs] by the Pelham Justice Court and a ruling on the constitutional issues by the Appellate Term of the Supreme Court, to which [the plaintiffs] have appealed, is expected in their state case." *Id.* at 194.

Neither *Wheaton College* nor *Giulini* supports Plaintiffs' contention that this Court can hold in abeyance unripe claims that were previously dismissed. *Wheaton College* was decided on narrow factual grounds, *see Wheaton College,*

703 F.3d at 553, and *Giulini* stands for the principle that a federal court cannot dismiss a federal action over which it has mandatory subject matter jurisdiction, except in certain circumstances, *see Giulini*, 654 F.2d at 193.

**\*4** Here, Judge Gleeson found that Plaintiffs' as-applied equal protection, takings, due process, and First Amendment claims were predicated on the same facts relating to the Town's land-use decisions, which were not yet final. *Dean, 2016 WL 660884, at \*17.* In finding that Plaintiffs' as-applied claims were not ripe for adjudication and would not be ripe until the Town issued a final decision as to Plaintiffs' properties, Judge Gleeson effectively held that the Court had no jurisdiction over Plaintiffs' claims until they have ripened. Thus, the considerations that rendered Plaintiffs' claims premature — namely, that the scope of Plaintiffs' constitutional injuries have yet to be defined — similarly prevent accrual of their claims for limitations purposes.

Because Plaintiffs' as-applied claims are not yet ripe for judicial review, the Court is without authority to hold them in abeyance.

**III. Conclusion**

For the foregoing reasons, the Court denies Plaintiffs' motion to hold in abeyance the as-applied claims dismissed on February 18, 2016.

SO ORDERED:

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4402020

---

**Footnotes**

1    The case was reassigned to this Court on March 11, 2016.

2    The Court assumes familiarity with the record as detailed in Judge Gleeson's February 18, 2016 decision, *Dean, 2016 WL 660884, at \*1,* and describes only the facts necessary to address Plaintiffs' request to hold the dismissed claims in abeyance.

3    In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985),* the U.S. Supreme Court established a test to govern the ripeness of as-applied takings challenges,

**Stephen v. Murray, Not Reported in Fed. Supp. (2016)**

2016 WL 4402020

irrespective of whether those challenges were brought pursuant to a statute, such as ⚑ § 1983, that applies a limitations period to the claims. ⚑ *Williamson Cty.*, 473 U.S. at 193.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add. 59